Jack SUSSMAN, a/k/a Jack Sussy, Petitioner,

v.

DISTRICT COURT OF OKLAHOMA COUNTY, State of Oklahoma, and Honorable Clarence M. Mills, Judge, Respondents.

No. A–14496.

Court of Criminal Appeals of Oklahoma.

May 28, 1969.

John Chiaf, Oklahoma City, for petitioner.

Curtis P. Harris, Dist. Atty., James R. McKinney, Asst. Dist. Atty., Oklahoma County, for respondents.

PER CURIAM.

This is an Original Proceeding wherein the petitioner seeks a Writ of Prohibition against the District Court of Oklahoma County and the Honorable Clarence Mills, District Judge. A hearing was held on November 20, 1967, oral argument presented, and at the conclusion of said hearing, this Court issued an order assuming jurisdiction, and staying all proceedings in the District Court pending a ruling by this Court.

Petitioner alleges that he has been denied his Constitutional immunity from double jeopardy as provided for in the Constitution of the United States; and, Article 2, Sec. 21, of the Constitution of the State of Oklahoma, and Title 22, Sec. 522 of the Statutes of the State of Oklahoma.

From the record filed in this Court, and oral argument, it appears that petitioner was put to trial for the crime of Arson First Degree, case number 32717, on September 20, 1967, before the Honorable Boston W. Smith, District Judge. The jury was impanelled and sworn; thirty-one witnesses testified on behalf of the State for three days; and, on September 22, 1967, the State rested its case. At this point, the defendant [petitioner herein] demurred to the evidence and moved the court for a directed verdict. The trial judge, after discussion and argument in chambers, did not rule on the demurrer and motion, but immediately upon his return to open court, declared a mis-trial *over the objection of the defendant*. Thereafter, the case was again set down for trial on the same charge, and defendant filed Motion to Dismiss and Plea of Former Jeopardy. A hearing was held on this Motion and Plea on October 25, 1967, before the Honorable Boston W. Smith, the court denying both. From this denial defendant proceeded to this Court on the instant case, application for Writ of Prohibition, asking this Court to prohibit the District Court of Oklahoma County from re-trying petitioner on the same charge, thus placing him in double jeopardy.

Defendant [petitioner] alleges in his writ that the trial court failed to affirmatively state sufficient grounds for declaring a mis-trial, and that the mis-trial was wholly unnecessary and that defendant *in no way* gave consent to the declaration of mis-trial. That, accordingly, this constituted—in legal effect—an acquittal, and thereby precludes his being tried again on the same charge, which would constitute double jeopardy in violation of his rights under the constitution.

This Court has, on many occasions, spelled out exactly what constitutes jeopardy; most recently in the case of Pickens

v. State, Okl.Cr., 393 P.2d 889 (1964) as follows:

"Before jeopardy attaches, each of the following conditions must exist:

"First; the defendant must be put upon trial before a court of competent jurisdiction.

"Second; the indictment or information against the defendant must be sufficient to sustain a conviction.

"Third; the jury must have been impaneled and sworn to try the case.

"Fourth; after having been impaneled and sworn, the jury must have been unnecessarily discharged by the court.

"Fifth; such discharge of the jury must have been without the consent of the defendant.

"When these things concur, then the discharge of the jury constitutes jeopardy and operates as an acquittal of the defendant, and he cannot again be placed upon trial for the same offense."

Therefore, the only issue—under these requirements—to determine is if the jury was unnecessarily discharged, thus constituting double jeopardy.

And, it becomes of the utmost importance as to what actually transpired at the end of the State's case when defense counsel asked for a directed verdict and argued his demurrer to the evidence.

From the partial record furnished this Court, we find the following:

"(THEREUPON, the following transpired in chambers after the State rested)

MR. CHAIF: Your Honor, at this time comes now the defendant, and demurs to the evidence and to the Information filed herein in the degree of Arson filed in that the building site of improvements on the premises fails to conform or come under Arson Statutes as charged herein; fails to confer jurisdiction on the Court, and fails to give the accused notice in order to prepare for his defense; does not serve as a predicate to plea former jeopardy; and the Court fails to have jurisdiction.

And that further, that the defendant at this time specifically demurs to the evidence on the ground that proffered evidence of the accomplice has not been corroborated, in particular his story, the credibility that an accomplice must have; but it also fails to connect the defendant with the commission of the crime and under the cases of the State of Oklahoma, there must be substantial corroboration under substantial evidence to connect the defendant with the crime itself and not simply with its perpretation, independent evidence, and testimony aside—completely aside from any accomplice's testimony.

Now specifically comes now the defendant and shows to the Court that the Court fails to have jurisdiction in this matter for the reason that the information does not allege ownership or tenancy which is a specific and required matter in Arson, does not allege possession or ownership.

Now where is the particular case on that, Phil. We have a case in point.

And for the further reason under the particular charge and the evidence herein, it does not fall in the degree of Arson of first degree since merchandizing has not been proved in this case. The first point is merchandizing, there is nowhere in the evidence that a restaurant or a club can be anything that can come under merchandizing and this case specifically holds—[D. C. Goff Co. v. State Bank of DeQueen, 175 Ark. 158] 298 S.W. 884:

(THEREUPON, cites case to the Court.)

MR. CHAIF: And, also Stokes v. State, 86 Okl.Cr. 21, 189 P.2d 424, held:

(THEREUPON, cites case to the court.)

MR. CHAIF: There is no jurisdiction here, corroboration of an accomplice is insufficient, it is impossible for them to get past the feature of ownership. They have to plead ownership or possession some way.

Now you have one other feature where the evidence completely fails, so it is my duty to call it to your attention.

All of this testimony with reference to insurance is absolute error for the simple

reason that the insurance man came up and he said there was not sufficient insurance to cover the loss.

Therefore, the cases hold if there is not over insurance, then there cannot be any criminal act in that feature because that evidence would not be admissible. That the reason that evidence is admissible in the first place, so you will understand, Your Honor, they say that it goes towards the intent and the crime itself.

But Number one, why go do anything if the property is under insured? What good is burning your property down if you can't get what you've got in it? You are going to lose money.

Judge, I briefed this, I didn't fool around. I spent a month briefing this case. I got every case in the United States that has any of these features and I ran them down *and I am this close to telling you if you don't want to sustain this Demurrer, I am pretty well going to stand on it.* (Emphasis ours.)

I am telling you I am serious about this Motion and this Demurrer and not only do you have to prove that he was over insured but you must prove that the owner knew it was over insured. There you are. There is a case right there on it. (indicating)

And another thing, he has alleged merchandizing in here and nowhere in the evidence is there any proof of merchandizing, absolutely nowhere.

Now, we have an Oklahoma case where a bar was involved so you could make an analogous situation between a club and a bar but it was second degree but in that particular case they said Joe Smith burned down the property of John Smith.

Do you understand specifically, you can't get around the Arson Statutes on specific allegations of who owned it because it is axiomatic, you can't be guilty of burning your own property. That is the whole feature of Arson, and Judge, I am absolutely serious and I know you have a jury waiting and this means a lot to this man. It

means a lot to me. I am quite frank with you. I know that is the law.

I want the Court to look at the cases in that brief and if you find anything that is to the contrary, I'll be willing for you to overrule it, but I will submit to you that you will not but by going on you will just cost us time and the State time and money; because there is no jurisdiction in this Court. But, they do have a right if they can make a charge stand on this Statute on insurance but nothing else.

If the Court sustains this Demurrer, they can go and turn around and charge him on that statute in my opinion, but absolutely not here, and Your Honor, if you were in a damage suit, you know as well as I that if the defendant didn't allege a particular thing, they can't prove it, they didn't allege it and they can't amend now. It is too late. They have closed the door on it. You can go over this brief, it's not there.

I am going to tell you another thing. No use getting into this other one. No use getting into that.

I briefed it from one end and I had two 'A' students who also briefed it and consulted with the O. U. Dean down there, and it is absolutely—there is no question about it, because I ran on to it and I had it double briefed.

I'm going to be quite frank with the Court, there is so much error in this case, I think we ought not go on, there is no use wasting the county's money down here. There is no use wasting our money down here.

THE COURT: Mr. McKinney, what do you say about pleading ownership or possession in this Information?

MR. McKINNEY: It is not necessary if the Court please, and Alma Gordon had an interest in that building, and—

THE COURT: I am talking about pleading on 21 O.S.A. 1390, Degrees of Arson.

(THEREUPON, Mr. McKinney reads Statute)

THE COURT: You're not answering my question. What about the necessity of pleading ownership?

MR. McKINNEY: The Statute says if you destroy a building in which merchandizing is carried on, then you are guilty of Arson in the First Degree, then you don't have to do it. The proof has shown that Sussman and Alma Gordon or whatever the name is were in possession. It is not necessary to allege ownership as to who the owner is and so forth.

"To constitute arson it is not necessary that another person than the accused should have had ownership in the building set on fire. It is sufficient that at the time of burning another person was rightfully in possession, of or was actually occupying, such building, or any part thereof."

MR. CHAIF: Your Honor, there is a case in point, they ever said that—this is on Page 5 of my brief.

MR. McKINNEY: In Okl.Dig., 100 P.2d 174, Okl.Cr. and in view of the Oklahoma Statutes Annotated, 22.

(THEREUPON, cites cases to Court.)

MR. CHIAF: They name the daughter. There is no name in here, Your Honor.

THE COURT: Mr. McKinney, any other points that you would like to reply to?

MR. McKINNEY: No, sir, that is all.

(THEREUPON, further discussion was had off the record.)

MR. McKINNEY: The State feels that the evidence is sufficient. It shows ownership. It shows all of it was under one roof.

THE COURT: All right, let's go back in.

(THEREUPON, chamber hearing adjourned."

At this point, court was re-convened, and the trial judge made the following statement:

"THE COURT: *Ladies and Gentlemen of the jury, I don't want to take your time to explain to you the reason why I am declaring a mistrial in this case,* *but I am doing so, which will take the case away from your hands.*

At the end of the Plaintiff's case as in all cases, then we have to retire to chambers and *discuss the propositions of law and Arson is a very technical matter as you have seen and this is a very technical case.*

*One proposition of law which created trouble here as far as the State was concerned was somewhat to my surprise. There is a decision of the Tenth Circuit Court of Appeals which holds that a person can't—is not guilty of Arson if he burns his own property and the State had a witness under subpoena to show that the premises were—a portion of the premises were leased or under the control or possession of another person and that witness did not honor that subpoena.*

And, all that you can be asked to do is to try the case and decide it based upon the evidence brought before you. *You can't try it on speculation, conjecture or surmise and being a difficult case, I just didn't think it was going to be fair to you to spend all of this time and then to be left with a quandary. After all you are the triers of the facts.*

I could go on and explain other problems to you, but that time would not permit. I know that you are tired, I've watched you—and worried. So the case —this does not dispose of the case, it will be tried again before another jury so that is the end of this case, Ladies and Gentlemen. I see smiles appearing on your facrs, go home and get a good rest over the weekend and be ready Monday, how is that?

MR. CHIAF: I want to make objection to and exceptions to the Court's declaring a mistrial and not sustaining the Demurrer and give notice of appeal—

THE COURT: Excuse me, Mr. Chiaf.

(THEREUPON, the Court conferred with the jury.)

MR. McKINNEY: For the record—

MR. CHIAF: I want to object and take exceptions to the ruling of the Court

in declaring a mistrial and for the reason that the Court should have sustained a Demurrer in this case and directed a verdict of acquittal for the Defendant; and I hereby give notice of intention to appeal to the Criminal Court of Appeals —the Court of Criminal Appeals of the State of Oklahoma.

MR. McKINNEY: Now if the Court please, for the record, it is my understanding that because of the various things that have happened through the trial—

THE COURT: Yes.

MR. McKINNEY: (continuing) and various motions for mistrial that you are now for those reasons at the request of the defendant, you have granted a mistrial?

MR. CHIAF: Objection to that statement being made about counsel for defense.

THE COURT: Well, let's wait until the clutter and clamor is over.

(THEREUPON, discussion was had with Mr. C. Samara)

THE COURT: For the record here and out of courtesy to counsel, I did not want—*wish to go into detail with this jury as far as all of the reasons for declaring a mistrial in this case,* but counsel for the defendant has put in the record, I suppose, twenty-four Motions for Mistrial; maybe more than that—*aside from the inavailability—unavailability of witnesses and the law questions,* I think there is a serious question of what there was sufficient error in the record not withstanding to declare a mistrial in this case.

And that is what I am doing, I am declaring a mistrial.

MR. McKINNEY: And for the record, it is also based on the prior motions for mistrial?

THE COURT: Yes, sir.

MR. McKINNEY: (continuing) that defense counsel has made.

MR. CHIAF: Now, I'll object to that for the reason that this was not declared until after the defendant interposed it's Demurrer to the evidence and a Motion for Directed Verdict and argued the same and it was expressed that it appeared that it would not—

THE COURT: I'll tell you what, Mr. McKinney?

MR. McKINNEY: Yes.

THE COURT: Mr. Chiaf—

MR. CHIAF: (continuing) the Information could not sustain—

THE COURT: If you all want to visit further, that is just fine, the Courtroom is available for you. I'm going to retire to Chambers.

MR. CHIAF: Thank you very much, Your Honor.

(THEREUPON, the Court adjourned at 4:30 P.M.)"

From this sparse statement of the trial judge to the jury, it becomes the burden of this Court to attempt to determine the necessity for the declaration of the mistrial.

This Court stated in the recent case (1967) Hutchens v. District Court of Pottowatomie County, Okl.Cr., 423 P.2d 474, that:

"Once the jury has been selected and sworn to try any criminal case, the jury should not be discharged prior to returning a verdict, except for a cogent or compelling reason, or for a manifest necessity."

It has been generally held, in most jurisdictions, that the manifest necessity permitting the discharge of a jury without rendering a verdict and without justifying a plea of double jeopardy may arise from various causes or circumstances; *but the circumstances must be forceful and compelling,* and must be in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care.

It has been held that the causes which create a manifest necessity should come under one of the following general categories:

1. Illness, disability, or death of juror, accused, judge or counsel, or a member of their family; or the court reporter.
2. Expiration of the term of court;
3. Defective information;
4. Disqualification or misconduct of a juror;
5. Misconduct of counsel, or accused;
6. Failure of jury to agree;
7. With the consent of accused.

With these general categories in mind, let us *again* look at the statement of the trial judge to the jury. He says: *"He doesn't want to take up their time to explain the reason for his declaring a mistrial"*. And, that: *"Propositions of law had been discussed in chambers and that arson is a very technical matter and this is a very technical case."* And, further:

*"One proposition of law which created trouble here as far as the State was concerned was somewhat to my surprise. There is a decision of the Tenth Circuit Court of Appeals* [British America Assur. Co. of Toronto, Canada v. Bowen, et al. (1943) 134 F.2d 256] *which holds that a person can't—is not guilty of Arson if he burns his own property and the state had a witness under subpoena to show that the premises were—a portion of the premises were leased or under the control or possession of another person and that witness did not honor that subpoena.*

*And, all that you can be asked to do is to try the case and decide it based upon the evidence brought before you. You can't try it on speculation, conjecture or surmise and being a difficult case, I just didn't think it was going to be fair to you to spend all of this time and then to be left with a quandry.* * * *"*

This Court has read—*and re-read*—this statement, and cannot find any reason stated by the trial judge that would fall within the cogent and compelling reasons of law in the general categories as stated above.

It simply isn't there.

The only conclusion this Court can reach from this statement is that the State had failed to show that the burned premises were owned by or in the possession of any person other than the defendant, which they would have had to demonstrate to negate the devastating effect of the Tenth Circuit decision [Bowen, supra] which had first been brought to the trial court's attention during the argument on the demurrer. The trial court advises the jury that a state's witness, *if she had testified,* might have carried the state's case over the Circuit decision, but she failed to honor the subpoena and didn't appear.

At this point, it was shown to this Court· at the time of Oral Argument, that in truth and in fact, the witness—Alma Gordon—had *never been served with a subpoena* as stated by the trial judge. All of the subpoenas were issued in May, and when the trial was continued, Judge Harris issued an order stating that *all subpoenas served* would carry over to the new date for trial. This could not have applied to Alma Gordon, as this Court was advised that the original subpoena was returned "Not Served". Further, by verified affidavit, the witness states:

"My name is Alma Gordon. ·I am 38 years of age, reside at 2501 N. Geraldine in Oklahoma City, Oklahoma, and I do hereby swear that the following is true and correct:

*I have never been served with subpoenas to appear for Mr. Jack Sussman's trial.* (Emphasis added) I was served with subpoenas to appear and testify against John Lester Randolph, which was set on March 21, 1967, and the Jack Bird trial which was set on April 12, 1967.

On the 19th of September I called my daughter and she told me the deputy sheriffs had been trying to locate me

concerning the Sussman trial. On the 20th of September, I started trying to call Mr. James R. McKinney, the Assistant District Attorney. I called him about 10:30 A.M. on the 20th and he was out then. I called him about 1:00 in the afternoon and he was out of the office. At approximately 4:00 P.M., I called back and he was in court, so I asked the secretary if anyone could take his calls and she referred me to Lt. Koch and I was transferred to Judge Boston Smith's chambers. The bailiff answered the phone and I asked to talk to Lt. Koch or Jim McKinney. She left the phone and came back and informed me that Lt. Koch was on the stand and no one could come to the telephone at that time. I then asked the operator to transfer me back to the District Attorney's office and asked them for Mr. McKinney's home telephone number from his secretary that I, Alma Gordon, had called him and that I would call him that night at home. I called his home that evening several times and received no answer at all and after 11:00 P.M., after I had gotten no answer, I called Richard Mack, who had always contacted me previously or served me with subpoenas to appear, at the Sheriff's Office. They told me he was off duty and I could reach him at home and they gave me his home telephone number. I called his home and talked with him and I told him that I understood that Mr. McKinney was trying to reach me. I informed him where I was, at Howard Johnson's East in Cottage 4, at Columbus, Ohio. He explained to me about the trial in process and I told him if it was necessary I would fly back to Oklahoma City. He said he didn't think it was important, but he would tell Mr. McKinney the next morning that I had called and where I was and if they needed me to be sure I kept them notified where I was so they could get in touch with me. He said if they didn't call me, not to worry about it.

After talking to Richard Mack, I left word with the switchboard of Howard Johnson's East in Columbus, Ohio, that I was expecting a very important telephone call from the Oklahoma County District Attorney's Office. I never received a call, as of Friday noon on the 22nd of September. I continually kept in touch with my home as to any calls from anyone who might have been trying to reach me. I talked with my family at least once a day from the time I left on Sunday, September 17th, until I returned on September 25, 1967.

At approximately 2:30 on Monday morning, September 25th, I was picked up on a material witness warrant and arrested.

I have not at any time avoided appearing, even at a telephone call from the District Attorney's office, I have gone down to discuss my testimony or the case with them on several occasions. I have never been requested by anyone to leave town to avoid appearance in Mr. Sussman's trial.

Further affiant saith not.

/s/ Alma Gordon

Verification. "

It is obvious to this Court that the State (the District Attorney) had overlooked the impact—*if they were aware of it at all*—of the *Bowen* case, supra, on their own charge of arson. It is also obvious that the District Attorney's office was derelict in securing the presence of this "principal witness", and then, as an excuse, attempted to overcome this failure by advising the trial court that the witness had failed to honor the subpoena—which was a gross misrepresentation.

The law recited in the *Bowen* case, supra, was taken from the Oklahoma Statutes, enacted in 1910, Title 21, O.S. § 1386, which says:

"To constitute arson it is not necessary that another person than accused should have had ownership in the building set

on fire. It is sufficient that at the time of burning another person was rightfully in the possession of, or was actually occupying such building, or any part thereof."

This statute was first interpreted by the Court in 1920 in Clemens v. State, 17 Okl. Cr. 274, 187 P. 1100. Quoted in said case with approval is the case of People v. De Winton, 113 Cal. 403, 45 P. 708, 33 L.R.A. 374, 54 Am.St.Rep. 357:

"A man is not guilty of arson in burning his own house, unless it or some part of it was in the possession of another * * *."

To completely ignore the other person in possession and making no effort in producing her by subpoena or otherwise, leaves us with no alternative but to assume the prosecuting officers were wholly unaware of the law as it pertains to arson as written in 1910.

However, a more effective acquittal of the accused could not have been more astutely acquired had there been a premeditated, deliberate, design to set the defendant free.

The State relies on Kamen v. Gray, 169 Kan. 664, 220 P.2d 160, wherein the trial judge, during the trial of the case, declared a mistrial and based it on a defense motion for a mistrial made and overruled previously, and during the earlier course of the proceedings, and in that case, the Court held:

"Defendant charged with receiving stolen property, by his request for trial court to declare a mistrial, waived his constitutional right of jeopardy if such existed after jury was impaneled and sworn, notwithstanding that trial court originally denied the motion and did not reverse its former ruling and declare a mistrial until after defendant had subsequently moved for a directed verdict of not guilty for reason that State had failed to prove allegations of the information."

It is to be noted that three members of the Kansas Supreme Court joined in a dissent.

However, the *Kamen* case is to be distinguished from the case at bar in several ways—the most important is the fact that the mistrial was declared with the implied consent of defense counsel. The proceedings in declaring a mistrial in the Kansas case was as follows:

"I am declaring a mistrial, and that ends the trial of this case. * * * I * * * will require a new information totally. * * * If the defense has any objections?

Defense Counsel: We will even assist them, if they want us to, in the description of the property.

On inquiry by counsel for the state as to grounds for the declaration of a mistrial, the court said:

Oh, there is so much prejudicial error went to the jury with respect to Exhibit 12 (the police report) and there are some details of the defendant's complaint that are substantial".

Two necessary elements in declaring a mistrial are present in the above case that are conspicuously absent in the case at bar. First, and most important, defense counsel did not object and implied their consent. In contrast, defense counsel in the instant case vigorously objected to the trial judge declaring a mistrial. And, second, in the *Kamen* case the trial judge designated specific reasons for declaring a mistrial, which may not have been sufficient without the consent of defense counsel.

 In support of defendant's contention that jeopardy applied, defendant quotes extensively from Yarbrough v. State, 90 Okl.Cr. 74, 210 P.2d 375.

He takes therefrom excerpts pertinent to this cause, such as:

"The general rule is that the prisoner has been put in jeopardy when he has been put upon trial before a court of competent jurisdiction, upon an indictment or information sufficient to sus-

tain a conviction, and the jury has been empanelled and sworn to try the case, and the jury is discharged without sufficient cause, and without the defendant's consent; and such discharge of the jury, although improper, results in an acquittal of the defendant. Cooley, Const.Lim. (6th Ed.) 399; Teat v. State, 53 Miss. [439], 453, 24 Am.Rep. 708; Whitmore v. State, 43 Ark. 271."

In State v. Frisbee, 8 Okl.Cr. 406, 127 P. 1091, in construing Article 2, § 21, Okl. Const., this Court stated:

"That this provision expressly declares that no person who has been once acquitted by a jury shall be again put in jeopardy of life or liberty for that of which he has been acquitted, and the Constitution goes further and in express terms provides: 'Nor shall any person be twice put in jeopardy of life and liberty for the same offense.' All authorities agree that when a jury is sworn jeopardy attaches. Under the latter clause of our Constitution, if jeopardy has once attached, a defendant cannot be placed again in jeopardy for the same offense, unless the jury were necessarily discharged, or unless the defendant agreed to their discharge, or unless a new trial is granted him upon his request (citing) Loyd v. State, 6 Okl. Cr. 76, 116 P. 959."

It was further said in *Yarbrough,* supra:

"In order, however, to justify an exercise of this power, the occasion for it must be very cogent, or, as some courts have said, there must be an absolute necessity. * * * In the absence of necessity, the defendant may reasonably demand that the result be regarded as an acquittal, and this applies to every offense charged in the indictment and on which the jury might have returned a verdict if they had not been discharged."

*We repeat and re-emphasize* our holding in the *Hutchens* case, supra:

"Once the jury has been selected and sworn to try any criminal case, the jury should not be discharged prior to returning a verdict, except for a cogent or compelling reason, or for a manifest necessity."

It is obvious from a careful reading of the trial judge's statement as to why he was declaring a mistrial, that his actions were prompted by the State failing to prove that someone else was in possession of the property when it was burned. And, without said proof, the crime of Arson had not been proven and he had no alternative but to sustain defendant's motion for a directed verdict or declare a mistrial and give the State another chance to prove the crime of Arson in some future trial.

■ The Supreme Court of the United States in Ex parte Lange, 85 U.S. 163, 18 Wall. 163, 21 L.Ed. 872–876, stated:

"The Common Law not only prohibited a second punishment for the same offense, but it went further and forbid a second trial for the same offense, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted."

In accordance with this philosophy, it has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when not followed by any judgment, is a bar to a subsequent prosecution for the same offense. It is not even essential that a verdict of guilt or innocence be returned for a defendant to have been placed in jeopardy so as to bar a second trial on the same charge.

This Court, like most others, has taken the position that a defendant is placed in jeopardy once he is put to trial before a jury and if the jury is discharged without his consent, he cannot be tried again. See, Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974; Kepner v. United States, 195 U.S. 100–128, 24 S.Ct. 797, 49 L.Ed. 114–124; 1 Ann.Cas. 655. In general, see, American Law Institute, Administration of the Criminal Law, Double Jeopardy, 61–72 (1935).

This prevents a prosecutor or judge from subjecting a defendant to a second prose-

cution by discontinuing the trial when it appears that the jury might not convict.

■ At the same time, jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where unforeseeable circumstances arise during the first trial, such as the failure of the jury to agree on a verdict; or, when the first trial is set aside on appeal, which is usually at defendant's request.

This case presents a typical situation ·that there is a right way and a wrong way to do things.

In this case, the wrong procedure was followed, and it is the opinion of this Court that jeopardy has applied.

And, therefore, the Writ of Prohibition, as prayed for, is hereby granted.