The **STATE** of Oklahoma ex rel. S. M. FALLIS, Jr., District Attorney of Tulsa County, Oklahoma, Appellant,

v.

Cynthia Lou **VESTREM**, Appellee.

No. O–74–361.

Court of Criminal Appeals of Oklahoma.

Oct. 2, 1974.

S. M. Fallis, Jr., Dist. Atty., David K. Robertson, Asst. Dist. Atty., Tulsa County, for appellant.

Ed Parks, Tulsa, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court, Tulsa County, Case No. CRF-73-1538, appellee waived jury trial with a non-jury trial commenced April 10, 1974. After the presentation of testimony a misunderstanding developed regarding a stipulation concerning the chain of custody of the evidence. The State requested a continuance in order to endorse additional witnesses to testify regarding the same. The defense objected to said continuance and moved for dismissal of the charge with the trial court granting the State a continuance over defendant's objection. Subsequently, May 3, 1974, defendant filed a motion before the trial court requesting reconsideration of the continuance. On May 7, 1974, the trial court ordered the instant case dismissed and stayed execution of the dismissal pending appellate relief. Thereafter, the State petitioned this Court for Writ of Prohibition in Case No. P-74-305, wherein this Court declined to assume original jurisdiction. Appellant is presently before this Court under authority of an appeal upon a Reserved Question of Law.

Appellee asserts one sole proposition of error, that being the trial court erred in dismissing the above case on the basis of former jeopardy. The trial court in so holding relied on this Court's decision in Belveal v. Rambo, Okl.Cr., 487 P.2d 714 (1971), wherein this Court had considered the question of former jeopardy under the following facts:

"The evidence established that Petitioner had been arraigned, entered a plea of not guilty, and that a non-jury trial had been set for July 2, 1971, before Judge Rambo. At that time, both the State and defendant appeared for trial. Both the defendant and the State had witnesses present and prepared to testify. The State proceeded and offered in evidence the transcript of preliminary hearings on the two cases since Bowman F. Upchurch, who testified at the Preliminaries, was not in attendance to testify at the trial. The State called Bud Argo, a Norman Police Officer, who testified that Upchurch was an undercover agent who had made the unlawful purchases

from Petitioner in these cases, and that two phone contacts were made in an effort to secure Upchurch's presence for the trial. The trial court ruled there had been a lack of diligence to secure the witness and denied admission of the Preliminary transcripts. The State then asked for a two-week continuance in the trial, announcing it could not sustain its case without Upchurch's testimony. The defendant moved for dismissal. The trial court denied defendant's motion and granted the State's continuance, announcing that the 'trial will be scheduled further at 2:00 p. m., 19 July, 1971.' "

This Court held that on the basis of the above facts the trial court had begun to hear evidence and the matter was in trial. The State in requesting a continuance during the course of the trial did not comply with the rule recited in Sanders v. State, 46 Okl.Cr. 293, 287 P. 846 (1930), which sets forth the requirements necessary for proper application for a continuance. Consequently, this Court held that since the State did not comply with the requirements set forth in *Sanders*, supra, jeopardy attached at the time evidence was heard on the first hearing date. Consequently, the State twice placed defendant in jeopardy at the time the trial was resumed and additional testimony was taken. In support of this decision the case of Sussman v. District Court of Oklahoma County, Okl.Cr., 455 P.2d 724 (1969) was cited.

We find the above decision to be an erroneous application of the concept of double jeopardy. *Sussman,* supra, generally holds that once the trial of an accused is initiated, the jury impaneled and witnesses sworn, the court may not declare a mistrial over the objection of the defense and then subsequently re-try defendant for the same offense. *Sussman,* supra, likewise would be applicable to similar circumstances arising in a non-jury trial once evidence is received by the trial court. However, *Sussman* is distinguishable from the case of *Belveal,* supra.

In *Belveal* as in the instant case, the trial court after hearing testimony continued the case to a day certain, so additional evidence could be heard prior to the court making its decision on the guilt or innocence of defendant. It is this Court's opinion a continuance of this matter is not analogous to a mistrial and does not raise an issue of double jeopardy. In support of this position we note the language in Havill v. United States, 5 Okl.Cr. 334, 115 P. 119 at page 123 (1911), wherein this Court at page 342 of its official opinion stated as follows:

" 'We have elected to reserve only two propositions for the consideration of this court. They may be thus stated: The defendant having been placed upon his trial in a court of competent jurisdiction, before a jury regularly drawn, impaneled, and sworn, and the trial of his case begun, he was entitled to have the trial proceed, and that upon the failure of the state to prove a case against him he then and, there became entitled to his discharge, and, this right having been once acquired, he was entitled to the benefits of the provisions of the Constitution of the United States and the Constitution of the state of Oklahoma against being twice put in jeopardy for the same offense; . . . .'

"In support of the first contention counsel cite the following authorities: State v. Nelson, 19 R.I. 467, 34 A. 990, 33 L. R.A. 559, 61 Am.St.Rep. 780; State v. Richardson, 47 S.C. 166, 25 S.E. 220, 35 L.R.A. 238; McCauley v. State, 26 Ala. 135. In these cases the jury was discharged during the trial over the objection of the defendant and a new trial ordered. Therefore the doctrine of these cases has no application to the case at bar. It is within the sound discretion of the trial court to postpone the further taking of testimony on account of the absence of witnesses who are expected to arrive that day on a certain train, and this discretion will not be controlled by

this court unless abused. In the case of Johnson v. State, 32 Ark. 309; it was said: 'After the state had examined several witnesses, the court against the objection of the defendant suspended the trial, and allowed the jury to separate from Tuesday until Friday, that the state might procure the attendance of a witness. The suspension of the proceedings in a trial is within the sound discretion of a court, and we are not prepared to say there was any abuse of its discretion in this case.' See, also, Griffin v. State, 90 Ala. 596, 8 So. 670.

"The contention that defendant was twice put in jeopardy for the same offense is without merit. As we view the record, there was not the semblance of error in the rulings of the trial court."

■ Although it would be an abuse of the trial court's discretion to indefinitely continue a case, and it would be error for the trial court, in light of the defendant's right to a speedy trial, to unreasonably continue a prosecution which had been initiated and not completed, it is this Court's opinion the concept of double jeopardy was improvidently considered in the determination of the issues in *Belveal,* supra. We therefore in this opinion expressly overrule the holding in *Belveal,* supra, regarding the application of double jeopardy.

■ As indicated above, this case is before us on a Reserved Question of Law. Therefore, the trial court's order dismissing the State's prosecution cannot be disturbed, nor the defendant again tried, but we expressly overrule *Belveal,* supra, which the trial court was obliged to follow, in reference to double jeopardy.

BRETT, J., dissents.

BUSSEY, J., concurs.

BRETT, Judge (dissenting).

I respectfully dissent to this decision because I believe Belveal v. Rambo, supra, which it expressly overrules, correctly states the law.

The majority opinion herein does not set forth that on April 10, 1974, this case came on for trial with the state being represented by Assistant District Attorney Langley, who announced ready for trial and submitted the testimony of Mr. Fred Taylor who was subjected to cross-examination. Next the prosecution offered its stipulation to include the chemist's report and the chain of custody, but defense counsel agreed to stipulate only that the report would be admitted without objection, and specifically declined to stipulate to any other facts offered. Because the necessary witnesses were not present, over the objection of defense counsel, the court granted the prosecution's motion for continuance until April 12, 1974. Defense counsel moved for dismissal under Belveal v. Rambo, supra. The defendant failed to appear at the April 12th hearing and the matter was reset for April 29, 1974.

Assistant District Attorney Robertson appeared for the state at the April 29th hearing and again offered the same stipulation, without having his witnesses present. Defense counsel again agreed only to the admission of the chemist's report, which incidentally contained a misspelling of defendant's name. The prosecution again offered its unverified oral motion for continuance, which was granted over defense counsel's objection. Defense counsel continued to press for dismissal relying on Belveal v. Rambo, supra. At the subsequent hearing on May 7, 1974, the trial judge sustained defense counsel's motion to dismiss. The prosecution came to this Court seeking issuance of the writ of prohibition, but this Court declined to assume jurisdiction of the matter.

Appellee's nonjury trial was discontinued after the State had presented the testimony of its first witness, there is no doubt that jeopardy had attached at that point. "When the court begins to hear evidence" is the term most often used to describe the point

at which jeopardy attaches in a nonjury trial. See: McCarthy v. Zerbst (1936, CA10) 85 F.2d 640, cert. den. 299 U.S. 610, 57 S.Ct. 313, 81 L.Ed. 450. In Rosser v. Commonwealth (1933) 159 Va. 1028, 167 S.E. 257, the court stated that the constitution's empowering the court to try a criminal case without the intervention of a jury does not deprive the accused of any protection he would have had if tried by jury; and that it was certainly not intended that in a trial before a court without a jury, the Commonwealth, after introducing its evidence and finding that it had failed to make a case against the accused, would be permitted to nolle prosequi the indictment and be entitled to subject the accused to another trial for the same offense. In the instant case a nolle prosequi was not entered, but instead the prosecution requested a protracted delay to muster its evidence, after failing to have its case prepared for trial. See also: M v. Superior Court of Shasta County (1971) 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664.

Belveal v. Rambo, supra, citing McCarthy v. Zerbst, supra, this Court stated:

"[W]here a case is tried to a court without a jury, jeopardy begins after accused has been indicted and arraigned, has pleaded and the court has begun to hear evidence."

The Supreme Court of Virginia in Rosser v. Commonwealth, supra, defined jeopardy to mean the danger of conviction. Insofar as the accused is concerned, the danger exists and is just as real when he is being tried before a court without a jury as it is when he is being tried by a jury.

In appellee's trial, the prosecutor admitted that he was "caught off guard" and could not proceed without a two weeks delay, in order to obtain his witnesses. This admisssion was made at the April 29th hearing, which caused it to be even more flagrant than the request for continuance on April 10th. At the May 7th argument

on defense counsel's motion to dismiss, the prosecutor argued: "It was a surprise to me that we would need any other evidence, other than the stipulation as to what I was led to believe that it would be . . . . And I believe that in this case it was necessary to interrupt this particular case due to the surprise that I had on the 29th day of April." Nonetheless, Assistant District Attorney Langley encountered the same problem on April 10th, when the trial was commenced; so the question of surprise lessens in its significance some nineteen days later. The facts appear to be that the prosecutor was surprised when defense counsel refused to stipulate his client into jail.

Because of the extensive requirements imposed upon the State Chemist, and allowing that he might have been tied up in some other litigation on May 10th, the continuance granted at that time—without the required affidavit—does not offend me. But the continued appearance of the prosecutor without his supporting witnesses, and without even attempting to provide the affidavit for continuance required by statute, does offend me. Consequently, I can see no rationale for this majority decision overruling Belveal v. Rambo, supra, which merely imposes the same requirements on the prosecution that are imposed on the defense counsel.

The effect of the majority decision in this matter is to create two standards of procedure for criminal trials, one for the prosecution, and another for the defense counsel. This Court cited Sanders v. State, 46 Okl.Cr. 293, 287 P. 846 (1930), in the Belveal decision. In the Sanders decision we stated with reference to defense counsel's oral request for continuance:

"The defendant contends, first, that the court erred in overruling his motion for a continuance. This was an oral, unverified motion, dictated into the record by counsel for defendant when the case was

called for trial on December 19, 1927. *The motion therefore did not comply with the requirements of the statute.* The motion was based on the proposition that the defendant had not been served with any notice that his case would be called for trial on that date, and, because he had not been notified, he had not prepared for trial by having certain material witnesses in his behalf present in court at that time. There is no statute requiring that the defendant be notified. The docket of the court had been published and circulated some two or three weeks before the case was called for trial. . . . But, irrespective of the insufficiency of defendants motion and of his laches, the record discloses that there was no abuse of discretion on the part of the trial judge in overruling his application." (Emphasis added.)

The same rule has been followed throughout the years, as applied to defense counsel. I believe, with certain few exceptions, the same rule should be applied to the prosecution. Hence, the first continuance fell clearly within the trial judge's discretion. But the subsequent unverifed oral requests for continuance did not fall within the same category. Therefore, I believe the continuance should have been denied and the prosecution dismissed, as the trial judge did on May 7, 1974, under the provisions of Belveal v. Rambo, supra. It is not contemplated that double standards should be created in the handling of criminal trials. The trial judge possesses sufficient power to exercise judicial discretion, but with limitations. The majority opinion relies upon the case of Havill v. United States, supra, as authority to overrule Belveal v. Rambo, supra. I agree that the trial court did not abuse its discretion in that case. But I fail to see the similarity between the instant matter and the facts of the Havill case.

Therefore, I feel compelled to respectfully dissent to this decision.