Sammy Ray BENNETT, Petitioner,

v.

The Honorable Joe D. SHUMATE, District Judge In and For McClain County, Oklahoma and/or the State of Oklahoma, Respondents.

No. O-78-560.

Court of Criminal Appeals of Oklahoma.

Oct. 24, 1978.

---

## OPINION

BUSSEY, Presiding Judge:

Sammy Ray Bennett has filed an application to assume original jurisdiction and a petition for writ of mandamus and/or prohibition in which he seeks an order of this Court either directing the Honorable Joe D. Shumate to dismiss with prejudice the charge of Murder in the First Degree pending against him in the District Court, McClain County, Case No. CRF–77–63, or in the alternative an order prohibiting the trial of the Petitioner in said cause on the ground that the retrial would place the Petitioner in jeopardy twice for the same offense in violation of the Fifth Amendment of the United States Constitution.

In his application to assume jurisdiction the Petitioner alleges that he is entitled to appeal the ruling of the Honorable Joe D. Shumate denying his motion to dismiss under *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). We deem it unnecessary to comment on the decision in *Abney*, since we have in the past granted prohibition barring retrial of an accused on the grounds of jeopardy when timely filed—*Sussman v. The District Court of Oklahoma County*, Okl.Cr., 455 P.2d 724 (1969)—and have reviewed the jeopardy question on appeal from conviction—*Barnhart v. State*, Okl.Cr., 559 P.2d 451 (1977).

The application and petition are accompanied by a sufficient record of the trial proceedings for a summary determination of the issue, and we accordingly assume jurisdiction. The record discloses that after both sides had rested in CRF–77–63, the court instructed the jury and the jury deliberated for more than twenty hours during a two-day period. They were questioned extensively by the court on at least three occasions as to whether or not they were of the opinion that further deliberations would assist them in arriving at a verdict; and on all but the last instance, although not a majority of the jury felt that further deliberations would be useful, the court returned the jury for further deliberations. On the last occasion the court ascertained that eleven of the jurors were of the opinion that a good night's rest would not be useful prior to further deliberations, while a single juror stated:

"Right now at this point I don't think it's possible, but I can't say a good night's rest might change things."

The court then discharged the jury stating that he felt that they were hopelessly deadlocked and after the jury was excused the defendant objected to their discharge.

The question before us is whether the discharge of the jury by the court from giving any verdict upon the information, with which he was charged, without the consent of the Petitioner, is a bar to any future trial for the same offense. We believe that this question must be answered in the negative. In *United States v. Sanford*, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976), the Court reaffirmed the test set forth in *United States v. Perez*, 9 Wheat. 578, 22 U.S. 578, 6 L.Ed. 165 (1824) to be

applied when the trial judge declares a mistrial. We are bound by that test in the construction and application of the Fifth Amendment of the United States Constitution, and *we hereby adopt it as the standard to be followed in construing the jeopardy provision of Article II, § 21*[1] *of the Oklahoma Constitution.*

In *Perez,* supra, Justice Story stated: "We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

And in *Sanford,* supra, in footnote 2, the Court stated:

"If the mistrial is declared at the behest of the defendant, the manifest necessity test does not apply. See *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)."

Under the facts of the instant case we believe that the Judge did everything humanly possible in attempting to allow the jury to arrive at a verdict prior to discharging them. Judge Shumate's discharge of the jury was, in fact, a manifest necessity and he did not abuse his discretion in discharging them, nor in overruling the motion to dismiss which was subsequently filed.

The petition for a writ of mandamus and/or prohibition, is accordingly DENIED.

BRETT, J., concurs.

---

1. Article II, § 21 provides in pertinent part:
   ". . . Nor shall any person be twice put in jeopardy of life or liberty for the same offense."