514 P.2d 1239

**The STATE of Arizona, Appellee,**

v.

**Leon DAVIS, Appellant.**

**No. 2671.**

Supreme Court of Arizona,
In Banc.

Oct. 22, 1973.

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Edward Hendricksen, Yuma, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of selling heroin, § 36–1002.02 A.R.S., and a sentence of not less than five nor more than ten years in the Arizona State Prison.

We are asked to consider only one question on appeal and that is: Was the chain of possession of the heroin broken rendering the heroin inadmissible into evidence?

The facts necessary for a determination of this matter on appeal are as follows. The defendant was arrested in Yuma, Arizona, for selling a "$20 paper" of heroin to an informant. At the trial in the matter, one of the arresting officers testified that the "$20 paper" of heroin: "was aluminum foil. I guess maybe possibly up to an inch long, half an inch wide and maybe an eighth to three-sixteenths of an inch thick." He placed it inside a plastic bag upon which he placed his initials, placed it in an envelope which he personally addressed, and sent it by registered mail to the Arizona Department of Public Safety Crime Laboratory in Phoenix, Arizona. He stated that he thereafter received the evidence back from the State Crime Laboratory, that he recognized the plastic bag, the envelope in which he had sent the material to the crime laboratory, and that the aluminum foil had a tip of plastic over the end with an initial on it. After identifying the letter and the plastic bag, he testified:

"Q All right. Now examining it, the bindle at this time, Mr. Kindle, does it appear to be from the outside in the same or similar condition that it was on the day that you sent it to the crime lab?

"A Yes, it does.

"Q And is that also in the same or similar condition as it was when you obtained it from Mr. Shephard?

"A That's right.

"Q Could you open the package and examine it?

"A (Witness does.)

"Q Is there anything different about that bindle than when you sent it to the Crime Lab, Mr. Kindle?

"A Yes. It has a piece of Scotch tape over it with, I believe, it must be the lab technician's initials on it. A number here. It says '121.50 milligrams'."

The officer also testified as to the contents of the foil being "brownish brown tinted color; Grainy-type powder."

The State called the chemist for the Arizona Department of Public Safety Crime Laboratory. He testified that he received the evidence contained in the sealed envelope from the property custodian of the Department of Public Safety Laboratory, that he opened the envelope and analyzed the contents. He stated:

"Q Would you examine the contents of that envelope, please. What do you find in the envelope, Mr. Mc-Bride?

"A Inside the envelope is a small plastic—what's called a zip-lock bag and

inside that is a 'piece of aluminum foil.

"Q Do you recognize that plastic bag and the piece of aluminum foil?

"A Yes, I do.

"Q How do you recognize it?

"A My initials appear upon each item.

"Q How are your initials placed on the piece of tinfoil or aluminum?

"A I placed some Scotch tape around the aluminum foil and then placed my initials on the tape.

"Q All right. Could you examine the condition of the tape that you placed around the aluminum foil and tell the Court what condition it's in at this time?

"A It appears as if it has not been tampered. It's still sealed as when I sealed it."

He testified that the foil contained heroin in a usable quantity.

"Q Could you break the taped seal on the foil bindle and open the bindle, please. What, if anything, do you find in the foil bindle, Mr. McBride?

"A There's some brown chocolate powder.

"Q Does this appear in any way to be the same or similar to that examined by you in September of this year?

"A Yes, it does.

"Q You can close that back up, please. As you examined the foil bindle and its contents, Mr. McBride, today do they seem to be in substantially the same condition as they were in when you first observed them in September of ths year?

"A They appear to be similar, sir."

And:

"After placing the tape around the aluminum foil I placed it back in the plastic bag; sealed that and placed it back in the manila envelope; sealed that and then gave it back to the property custodian at the State Crime Lab."

It would thus appear that the officer in Yuma placed the evidence in a plastic bag, placed the contents in a sealed envelope, personally addressed it, and sent it to the Department of Public Safety Crime Laboratory in Phoenix. Then the property custodian of the Department of Public Safety Crime Laboratory delivered this envelope unopened to the chemist who performed the experiments, determined the contents to be heroin, placed the contents back in the original foil bindle, then in the plastic bag and the envelope and turned it over to the property custodian for mailing back to Yuma.

The defendant contends that the chain of possession was "broken" in that all persons who handled the exhibit from the time it left the possession of the officer and was returned to him did not testify, including the property custodian of the Department of Public Safety Crime Laboratory.

In the case of a narcotic which is readily susceptible to alteration and substitution, once it has left the hand of the officer receiving it and has come into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake. Failure to establish such a chain of possession will render the narcotic inadmissible as evidence.

This is not, however, an impossible burden, for the State is not required to exclude every remote possibility of its happening:

"* * * Evidence which strongly suggests the exact whereabouts of the exhibit at all times will often be sufficient for chain of custody purposes. * * *"
Butler v. State (Ind.), 289 N.E.2d 772, 777 (1972).

And where there is no evidence to suggest any possibility of substitution or tampering it may properly be received in evidence. Sparks v. State (Nev.), 506 P.

2d 1260 (1973); Cartwright v. State (Ind.), 289 N.E.2d 763 (1972).

"The rule is well settled that in setting up a chain of evidence, the prosecution need not call upon every person who had an opportunity to come in contact with the evidence sought to be admitted. * * *" Wright v. State (Alaska), 501 P.2d 1360, 1372 (1972).

This court has stated:

"A foundation for the introduction of an object into evidence may be laid either through its identification by witnesses or through the establishment of a chain of possession. To require not only the continuity of possession to be established but also that there be positive identification by everyone concerned would impose an unnecessary burden while it would not insure a fairer trial to the accused. * * *" State v. Rascon, 97 Ariz. 336, 338, 400 P.2d 330, 331 (1965).

The courts have generally held that the mailing of a narcotic sample to a central laboratory and its return under proper conditions does not amount to a break in the chain of custody or possession. In State v. Tokatlian (Ia.), 203 N.W.2d 116 (1972) hashish was mailed to the Federal Bureau of Narcotics and Dangerous Drugs Laboratory in Chicago, Illinois, for an analysis and then mailed back to the officer where it remained in his possession until the day of the trial. In State v. Frates (Mont.), 503 P.2d 47 (1972) tablets were mailed to the Bureau of Narcotics and Dangerous Drugs in San Francisco for examination and returned in a plastic container, a mailing box and mailing wrapper bearing the handwriting of one of the officers, to the police department. In Haywood v. State (Tex.), 482 S.W.2d 855 (1972) a substance was mailed to the Texas Department of Public Safety Laboratory in Austin, analyzed, and returned. See also Baldwin v. State (Tex.Cr.App.), 490 S.W.2d 583 (1973). And in a federal case arising in Arizona, the customs officer sent the narcotic by registered mail to the laboratory in Los Angeles and it was returned by registered mail. The Ninth Circuit in upholding the admissibility of the narcotics stated:

"Before a physical object connected with the commission of a crime may properly be admitted in evidence there must be a showing that such object is in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge. Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence. United States v. S. B. Penick & Co., 2 Cir., 136 F.2d 413, 415." Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960).

Concerning the property custodian who did not testify the Texas Court of Criminal Appeals, in a case wherein some LSD was sent to the state chemist for testing, stated as follows:

"The appellant argues specifically that because of the 'absent testimony by the mail clerk who received the envelope and the chemist who opened such envelope, the state has failed to establish an adequate chain of custody as to such exhibit.'

"Mull, the undercover agent, identified state's exhibit number one as being a brown manila envelope which he mailed to the Texas Department of Public Safety Chemistry Laboratory in Austin. Inside the brown envelope was a white envelope. The agent said he had placed on the white envelope the name Joe Kilburn —age approximately thirty—sale and possession of a dangerous drug—the date of the offense—the location, Lubbock—he noted that the white envelope contained a plastic bag containing thirty-seven orange tablets—LSD. He had

then signed the white envelope and placed thereon his Department of Public Safety identification number. Mull then placed the plastic bag with the thirty-seven tablets into the white envelope, sealed it, placed the white envelope in the brown envelope, sealed it, and mailed them to Austin. Upon viewing the tablets while he was testifying, he said they appeared to be the same as those sold to him by appellant and the ones he had sent to the laboratory for analysis.

"Testimony showed that the sealed brown envelope was delivered to the Chemistry Laboratory of the Department of Public Safety in Austin by an unknown mail clerk. * * * When Mc-Cutcheon was assigned the file in this case he obtained the envelope from the vault, unsealed it, selected one of the tablets and performed the chemical tests and analysis necessary. He then placed his name and the date on the envelope, sealed it and returned it to the vault. He later obtained this envelope from the vault and brought it to Lubbock when he came to testify in this case.

"McCutcheon further testified that during working hours the vault door remained open while the twelve chemists, or some of them, were at work in the laboratory. When they were not present the vault would be closed. The evidence shows a chain of custody sufficient for its admission into evidence. * * *" Kilburn v. State (Tex.Cr.App.), 490 S. W.2d 551, 553–554 (1973).

In the instant case we believe that an adequate chain of custody has been shown. The property custodian of the Department of Public Safety played only a minimal role in the chain of possession. He collected the mail and gave it to the chemist in the laboratory, and then when the chemist was through, mailed it back to Yuma. The officer identified the containers as did the state chemist. The probability of tampering, altering, or contaminating the substance was almost nil. There was high probability that the integrity of the exhibit was maintained as it traveled from Yuma to the state laboratory and back. The trial court properly admitted the heroin into evidence.

Judgment affirmed.

Concurring

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.