Argued December 17, 1975, affirmed February 3, reconsideration denied March 10, petition for review denied April 13, 1976

STATE OF OREGON, *Respondent,*

*v.*

ORLANDO ARTHUR VANCE, *Appellant.*

(No. C 75-01-0355 Cr, CA 5035)

545 P2d 604

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*James A. Hill,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Upon trial by jury, defendant was convicted of criminal activity in drugs by furnishing heroin, ORS 167.207. Defendant contends that the trial court erred (1) in denying his motion to dismiss for pre-indictment delay, and (2) in allowing the heroin to be introduced into evidence without a sufficient chain of custody being established.

Defendant was indicted on January 30, 1975. On September 20, 1974, a special agent of the Federal Drug Enforcement Administration purchased heroin from defendant in northeast Portland after being led to the location by a named informant. There were several policemen present, including Portland City Police Officer Kanzler, who observed the meeting of the special agent, the informant and defendant. Defendant testified that he could not remember where he was or what he was doing on September 20.

The special agent did not stay in contact with the informant. Although not permanently employed, this informant had acted for Officer Kanzler 20 or more times and was paid on six or seven occasions. Kanzler's last contact with informant was in December 1974 or January 1975. At that time the informant indicated that someone had "shot up his car" and that defendant and his sister had put out a "contract" on the informant, the special agent and Kanzler. Although the officer did not urge the informant to stay out of sight, the informant told the officer he was going to be very cautious when he came to Portland.

The circuit court would have been required to grant defendant's motion to dismiss the indictment only

> " "* * * if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. * * *' " *State v. Serrell,* 265 Or 216, 219-20, 507 P2d 1405 (1973) (quoting from *United*

[ 285 ]

*States v. Marion,* 404 US 307, 324, 92 S Ct 455, 30 L Ed 2d 468 (1971)).

The accused has the burden of proving prejudice to his right to due process. *State v. Serrell,* supra at 220; *accord, State v. Heyer,* 16 Or App 22, 25, 517 P2d 314 (1973), Sup Ct *review denied* (1974); *State v. Gunn,* 16 Or App 26, 29, 517 P2d 316 (1973), Sup Ct *review denied* (1974); and *State v. Brown,* 23 Or App 158, 541 P2d 491 (1975).

■ Defendant argues that the pre-indictment delay caused him substantial prejudice by preventing him from presenting at trial an essential eyewitness, the informant.[1] Defendant does not contend that the delay was "an intentional device to gain tactical advantage" over him. The court, in fact, found that the delay was "attributable to the use of undercover officers." *See generally,* Amsterdam, *Speedy Criminal Trial: Rights and Remedies,* 27 Stan L Rev 525, 527 (1975).

Defendant's inability to locate witnesses may well be a factor in deciding whether pre-indictment delay caused substantial prejudice to an accused. Here, defendant claims that the informant was crucial to a defense of misidentification. Following the drug trans-action the special federal agent filed a report in which he described seller as having "noticeable gold caps on his front teeth." At the time of trial defendant did not have any gold caps on his teeth. He testified that he had not been to the dentist for six years.

The description discrepancy is not as significant as it might seem in light of strong evidence identifying defendant as the person who sold heroin to the special agent. The special agent identified defendant correctly

---

[1] Defendant recognizes that it is settled that he "does not carry his burden by claiming he does not remember where he was on the day the crime was alleged to have been committed." *State v. Serrell,* 265 Or 216, 220, 507 P2d 1405 (1973); *State v. Heyer,* 16 Or App 22, 25, 517 P2d 314 (1973), Sup Ct *review denied* (1974); *State v. Gunn,* 16 Or App 26, 29, 517 P2d 316 (1973), Sup Ct *review denied* (1974); *State v. Brown,* 23 Or App —, 541 P2d 491 (1975).

in Portland Police Department, Portland Police Bureau, Oregon State Police Bureau and FBI mug shots. The special agent also made a courtroom identification of defendant. Furthermore, Officer Kanzler testified that he had known defendant since 1968 and that he recognized defendant as the person he saw meet the special agent and the informant at the time of the drug transaction. We find that defendant's failure to locate and produce the informant did not prejudice him.

■ Defendant contends that the prosecution had a duty to keep the informant available so that he could be called as a defense witness because his testimony was essential to the defense. In the court below, however, defendant did not make a motion seeking to require the state to produce the informant. *See, State v. Cortman,* 251 Or 566, 574, 446 P2d 681 (1968), *cert denied* 394 US 951 (1969). Therefore, we do not consider this on appeal.

■ Defendant also urges us to find there is a fatal gap in the evidence chain. The forensic chemist who tested the heroin in San Francisco testified that he did not personally take receipt of the evidence at the post office, but got it from the custodian who picks up the registered mail. The custodian did not testify.

The Oregon Supreme Court addressed this issue in *State v. Anderson,* 242 Or 368, 409 P2d 681 (1966). The court stated:

"It may be conceded that, ordinarily, when an object is taken from the defendant for the purpose of testing and passes through the hands of several persons a foundation for its admission into evidence must be laid by the testimony of each person who had possession or custody of the article: 2 Wharton's Criminal Evidence (12th ed) 586, § 665. But this is not an inexorable rule of law and the ultimate question always is whether the proof shows with reasonable certainty that the article offered is the identical article taken from the accused. That question is

addressed in the first instance to the sound discretion of the trial judge.

"* * * * *

" '* * * Factors to be considered in making this determination include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it. If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence.' * * *" 242 Or at 374-75.

It was not error for the trial court to find that the heroin was admissible in this case. Defendant's argument concerning the weak link goes to the weight of the evidence and could have been considered by the jury as the trier of fact. *Cf., State v. Shirley*, 1 Or App 635, 644, 465 P2d 743 (1970).

Affirmed.