Jimmy D. BAUGHMAN *v.* STATE of Arkansas

CR 79-1                                    582 S.W. 2d 4

Opinion delivered June 4, 1979
(Division II)
[Rehearing denied July 9, 1979.]

*Jeff Duty,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. As a result of a search of his motel room on April 24, 1978, Jimmy D. Baughman was

charged with possession of LSD, a schedule I controlled substance [Ark. Stat. Ann. § 82-2605 (Repl. 1976)] and possession of marijuana, a schedule VI controlled substance [Ark. Stat. Ann. § 82-2614 (Repl. 1976)], both in violation of Ark. Stat. Ann. § 82-2617 (Repl. 1976). Appellant was found guilty in a jury trial held on September 18, 1978, fined $250 on the misdemeanor charge and sentenced to five years (three of which were suspended) on the felony on October 6, 1978. We find no error in respect to either of appellant's two points for reversal and therefore affirm the judgment.

Appellant first contends that the prosecution did not establish a sufficient chain of custody to allow introduction of the state's exhibits numbers 2, 3 and 4, which are, respectively, a piece of blotter paper containing LSD, a plastic prescription bottle and a plastic film can, both containing marijuana. The LSD was found in the appellant's wallet and one of the containers of marijuana was found on a nightstand in the room while the remainder of the marijuana was found in a jacket in the room. Detective Robert Post of the Harrison Police Department testified that he participated in the search of the appellant's motel room and that the evidence was turned over to him as evidence custodian. Post placed each item in a plastic envelope and attached an evidence marker to each of the three envelopes. This marker tape contained the initials of both Post and Detective Hamilton, another member of the Harrison Police Department, and the date the items were seized, April 24, 1978. Each item was given a number by Post, the blotter paper being #E6, the prescription bottle being #E2 and the film can being #E3. Post placed the three items in the "evidence locker," a locked room at police headquarters, where they remained until April 27, 1978, when he personally delivered the evidence to James Speeker, who at that time was employed as a chemist by the Arkansas State Crime Laboratory.

Speeker testified that he received the samples from Post and completed his analysis on the same day. After analysis, Speeker placed the items in an envelope which he secured with a seal bearing his signature. The envelope was then placed in a locked evidence room, to which only the chemists employed by the State Crime Laboratory have access, and remained there until the items were removed for introduction

at appellant's trial. A certified copy of a "Record of Drug Analysis," signed by Speeker, was also introduced into evidence. It verified the circumstances related by Post and Speeker concerning the marking of the items and the date and method of delivery of the items to Speeker. This document indicated that LSD and marijuana were found in the sample.

The main thrust of the appellant's argument relating to the chain of custody is based on the fact that James Speeker was not employed by the State Crime Laboratory at the time he testified at the appellant's trial. Speeker's testimony revealed that he had terminated his employment with the State Crime Laboratory in May or June of 1978, three to four months before appellant's trial. Appellant is apparently contending that the fact that Speeker was not employed by the State Crime Laboratory during the entire interval between the analyses of the samples and the appellant's trial in and of itself makes the chain of custody inadequate to allow introduction of the evidence. In establishing a chain of custody prior to the introduction of evidence at trial, it is not necessary to eliminate every conceivable possibility that the evidence has been tampered with; it is only necessary that the trial judge be satisfied that the evidence is genuine and, in reasonable probability, has not been tampered with. See *Munnerlyn v. State*, 264 Ark. 928, 576 S.W. 2d 714 (1979), and cases cited therein.

Speeker testified that the evidence was sealed in an envelope as soon as the analysis was complete. The envelope was then placed under lock and key, where it remained until the appellant's trial. Only chemists employed by the State Crime Laboratory had access to the area where the envelope was kept and the seal Speeker placed on the envelope was intact at the time the evidence was offered for introduction at the trial. Speeker estimated that, in the seven to eight months he had been employed by the crime lab prior to April 27, 1978, he had conducted tests on about five hundred samples submitted by various law enforcement agencies. It would be unreasonable to require each chemist to maintain exclusive possession of, and control over, each and every sample he or she has analyzed, until its introduction into evidence or its return to the submitting agency. Under the procedure

adopted by the State Crime Laboratory, all of the tested samples are placed in a storage room, with access restricted to the chemists who are employed there. The prospective evidence remains in this locked area until the chemist who tested it retrieves it for final disposition. Under such a system, we are not persuaded by the argument that the termination of the employment of the examining chemist necessarily increases the possibility that a particular sample has been tampered with. The sample would be accessible to the same people regardless of the employment status of the chemist who performed the analysis. The termination of the employment of Speeker did not destroy the chain of evidence in this case and the trial judge did not err in allowing state's exhibits numbers 2, 3, and 4 to be introduced into evidence.

Appellant also contends that it was error for the trial judge to give the state's requested instruction number three, over the appellant's objection. The instruction read as follows:

Voluntary or self-induced intoxication is no defense to the commission of a crime.

Self-induced intoxication means intoxication caused by a substance which the actor knowingly introduces into his body, the tendency of which to cause intoxication he knows or ought to know.

This instruction was apparently requested in response to the issue of voluntary intoxication repeatedly raised by the appellant's attorney, not only by cross-examination of the officers who participated in the search of the appellant's motel room, but by examination of appellant when he testified.

Through appellant's testimony it was shown that he had spent the day at Lead Hill Lake and had taken a supply of beer and whiskey. Appellant said that he had "passed out" when the officers came to his room, and that he did not remember very much until he awakened the next morning. When asked about his knowledge of the white blotter paper in his billfold, Baughman said that he was drunk and didn't know how it got there and that, because of his drunken condition, he wouldn't have remembered seeing the "roach clip,"

hemostat and scissors picked up by the officers, if he had actually seen them. Each of the officers testified, on cross-examination, that Baughman was drunk, "passed out," or comatose when they entered his room. One of them admitted that, from appearances, there had been a real drinking party in the room.

After such deliberate accentuation of the appellant's intoxication, it is now argued that it was error to give the instruction because intent was not an element of the possession charges and that to so instruct the jury foreclosed the jury's consideration of the possibility that the appellant was in fact so intoxicated that he was not aware that someone placed the blotter paper in his wallet and the film canister in his room. (Appellant admitted possession of the prescription bottle containing marijuana, but denied possession of the other two items.) This instruction appears to have been a proper statement of the law relating to voluntary intoxication. See *Varnedare* v. *State*, 264 Ark. 596, 573 S.W. 2d 57 (1978). Appellant does not contend that it was not. We cannot agree that it had the effect appellant contends it had. Rather, the effect of an instruction such as the state's requested instruction number three was to inform the jury that the appellant was not relieved of criminal responsibility for the possession of controlled substances simply because he was intoxicated at the time the contraband was found in his possession, and it was appropriate in view of the proper trial tactics of appellant's attorney. The jury was free to find, in light of the other instructions given by the trial judge, that the appellant was not in possession of the controlled substances and was, because of his intoxication, unaware of the presence of the substances. If the jury should have been instructed further on the subject, it was incumbent upon appellant to request an appropriate instruction. *Murphy* v. *State*, 248 Ark. 794, 454 S.W. 2d 302.

Additionally, it appears from the record that the appellant's attorney did not object to the state's requested instruction number three until after all of the instructions had been given and the jury had been charged, and even then, only made a general objection, not specifying the reasons for his objection. An objection to an instruction must specify the grounds for the objection and afford the trial judge an oppor-

tunity to properly instruct the jury, and a general objection will not suffice, even if the instruction is inherently erroneous. Rule 13, Uniform Rules for Circuit and Chancery Courts, Ark. Stat. Ann. Vol. 3A (Supp. 1977), 251 Ark. 1117; *Cassidy v. State,* 254 Ark. 814, 496 S.W. 2d 376; *Rogers* v. *State,* 258 Ark. 314, 524 S.W. 2d 227, cert. den. 423 U.S. 995, 96 S. Ct. 423, 46 L. Ed. 2d 369 (1975).

The judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and PURTLE, JJ.