**STATE of Utah, Plaintiff and Respondent,**

v.

**Richard Allen BRADSHAW, Defendant and Appellant.**

**Richard Allen BRADSHAW, Plaintiff,**

v.

**Lawrence MORRIS, Warden, Utah State Prison, Defendant.**

Nos. 18430, 18255.

Supreme Court of Utah.

Feb. 9, 1984.

Dexter L. Anderson, Fillmore, for defendant and appellant.

Richard Allen Bradshaw, pro se.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

After a jury trial, the defendant was convicted of the felony of producing a controlled substance in violation of U.C.A., 1953, § 58-37-8(1)(a)(i), and of the class B misdemeanor of possession of a controlled substance in violation of § 58-37-8(2)(a)(i). In case no. 18255, with representation of counsel, he appeals seeking a reversal of the judgment or a new trial. In case no. 18430, acting pro se, he petitions this court for a writ of habeas corpus.

The Milford City police chief and a Beaver County deputy sheriff, acting on information from an informant, went to the residence of the defendant's neighbor with his permission where they observed marijuana plants growing on the defendant's adjacent property. The deputy sheriff reached over a small retaining wall and took three leaves of a marijuana plant from defendant's yard. Later the same day, the police chief obtained a search warrant on the basis of his observations. He, the deputy sheriff and other officers returned to and entered defendant's premises pursuant to the warrant. Because no one was home, only the outside premises were initially searched. The officers found over 100 marijuana plants growing in a planter area next to a root cellar behind defendant's house and at other locations in the backyard. Upon defendant's return home, he was arrested and the officers continued the search, finding other physical evidence such as marijuana stems, seeds and ash residue in his house.

Defendant asserts the following contentions: (1) the search warrant executed against him was void because it was issued on an affidavit not properly signed; (2) evidence was improperly admitted at trial because it was derived from a search warrant which had been issued based upon illegally seized evidence; (3) evidence was admitted at trial without proper foundation; (4) the granting of a continuance during trial placed him in double jeopardy; (5) he was denied timely representation by counsel and the right to a speedy trial; and, (6) the evidence was insufficient to sustain the verdict. Acting pro se he re-asserts some of the same arguments and adds: (7) the search and his arrest were illegal because the search warrant was executed by a police officer who had not been granted police officer certification.

■ Defendant first contends that the police chief's failure to sign the warrant affidavit in the space above the signature of the magistrate invalidated the search warrant. In *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the United States Supreme Court recognized that technical requirements of

elaborate specificity have no proper place where affidavits for search warrants are concerned. Constitutional policy requires realistic, common sense interpretation where non-lawyers draft documents in the haste of criminal investigations.

In the instant case, the police chief did not sign the affidavit at the bottom of the page, but signed it at the top following the statement: "The peace officer undersigned, being sworn, states on oath...." Since he did sign the affidavit and also swore on oath that his statements in it were true, the chief's failure to place his signature in the proper location on the form resulted in no prejudice to the defendant. Defendant's formalistic argument is, therefore, unpersuasive. See *People v. Sloss,* 109 Cal.Rptr. 583, 34 Cal.App.3d 74 (1973).

■ Secondly, the defendant contends that evidence which was admitted at trial should have been suppressed by application of "the fruit of the poisonous tree" doctrine since the search warrant was issued based upon three marijuana leaves which had been seized during an illegal trespass. However, the trial court determined that the warrant was issued based upon the officer's observations before and separate and apart from the deputy taking the leaves. Therefore, the consequent evidence was admissible since it was derived by means sufficiently distinguishable to be purged of any taint which the taking of the leaves might have suggested. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The defendant grew marijuana in his backyard, which was openly viewed from his neighbor's yard, without any intrusion into his property. Therefore, he had no reasonable expectation of privacy concerning it. *State v. Lee,* Utah, 633 P.2d 48 (1981). Cf. *State v. Echevarrieta,* Utah, 621 P.2d 709 (1980).

■ Defendant's third contention is that the marijuana seized from his residence pursuant to warrant was admitted at trial without proper foundation. Before real evidence can be admitted, the trial court must be convinced that the proposed exhibit is in substantially the same condition when introduced into evidence as it was when the crime was committed. Where the evidence has passed through several hands, circumstances surrounding chain of possession are relevant in making this assessment. *State v. Madsen,* 28 Utah 2d 108, 498 P.2d 670 (1972); *State v. Crook,* 98 Idaho 383, 565 P.2d 576 (1977). See also 29 Am.Jur.2d *Evidence,* § 774 at 846 (1967). However, the party proffering the exhibit is not required to eliminate every conceivable possibility that the evidence may have been altered. *Baughman v. State,* 265 Ark. 869, 582 S.W.2d 4 (1979); *State v. McGinley,* 18 Wash.App. 862, 573 P.2d 30 (1977); *State v. Hodges,* 109 Ariz. 196, 507 P.2d 121 (1973). Some jurisdictions have held that where no evidence has been offered to suggest tampering, proffered evidence is admissible if the chain of evidence is otherwise adequately established. *Lebeau v. State,* Wyo., 589 P.2d 1292 (1979); *State v. Davis,* 110 Ariz. 51, 514 P.2d 1239 (1973); *Sparks v. State,* 89 Nev. 84, 506 P.2d 1260 (1973). A weak link in the chain and any doubt created by it go to the weight to be given the evidence once the trial court has exercised the discretion to conclude that in reasonable probability the proffered evidence has not been changed in any important respect. *State v. Vance,* 24 Or.App. 283, 545 P.2d 604 (1976); *Sorce v. State,* 88 Nev. 350, 497 P.2d 902 (1972).

■ In this case the defendant disputes the continuity of the chain of possession of the seized marijuana at the point where a sample of it was mailed to a state chemist for analysis. Mailing a narcotic to a central laboratory does not necessarily constitute a break in the chain of custody. *State v. Davis,* supra. The particular sample that was mailed here was also otherwise traceably transferred from party-to-party and identified. No evidence was presented to suggest that mailing it resulted in tampering or its substitution. Also, the fact that it remained overnight in a box ready for mailing in the locked office of a sheriff whose deputies also had access to the office is a fact which goes to the

weight of the evidence. Evidence at trial indicated that the deputies lived far from the office, and no evidence suggested that they or anyone else had tampered or even been in contact with the box that night.

■ Defendant further argues that one of the bags of the seized marijuana should not have been admitted because it was not any more reliable than its sample. This argument is based upon a misconstruction of the facts. The reliability of the seized marijuana as evidence did not depend upon the admission of this sample, which itself was properly admitted.

■ Finally on this issue, the defendant's argument that U.C.A., 1953, § 77–23–8 prohibited the police chief, who seized the marijuana, from turning it over to a property officer is unpersuasive. This section of the code requires the officer who seized the property to be responsible for its safekeeping and maintenance. Responsibility does not require constant immediate possession.

■ Contention four of defendant, that the granting of a continuance during trial placed him in double jeopardy, is based upon the argument that the trial court continued the trial because the prosecutor was having difficulty in making his case. The trial court granted the continuance because of the late hour (6:40 p.m.) and because he had ruled on evidence in a manner not anticipated; but, he stated that he granted it "primarily, however, [because of] the lateness of the hour." Because the prosecutor was afforded time which he used to bolster his evidence and reorganize his presentation by recalling certain witnesses when court reconvened, defendant contends that he suffered double jeopardy. He argues that granting the continuance amounted to conducting two trials. For support he cites the Utah Constitution, article 1, section 12, which prohibits double jeopardy, and U.C.A., 1953, § 76–1–403(2) of the Utah Criminal Code, which mandates acquittal on a finding of insufficient evidence.

*State ex rel. Fallis v. Vestrem,* Okl.Cr. App., 527 P.2d 195 (1974) is persuasive. In that case, after a dispute arose concerning the chain of possession, the prosecution, over objection, was granted a continuance in order to obtain additional witnesses. On a motion to reconsider, the trial court dismissed the case but stayed execution of the dismissal pending review. Finding the dismissal to have been error, the criminal appellate court ruled that an issue of double jeopardy had not been raised. The same is true here. Defendant was not placed in double jeopardy during the trial simply because a continuance was granted. The continuance did not create two separate trials.

Fifth, defendant contends that he was denied timely representation by counsel and the right to a speedy trial. The following events occurred over a period of approximately six months. Defendant was arraigned before a Justice of the Peace who appointed a public defender in his behalf. The public defender, however, also represented the city which employed the officers who had searched defendant's premises, arrested him, and would testify against him. At the preliminary hearing defendant asked the public defender to resign and told the court that he would provide his own counsel. Defendant failed to appear at the next hearing, and at the following hearing he requested that another public defender be appointed. Because he was without authority to appoint another, the Justice of the Peace transferred the case to a circuit court where counsel was appointed. Because of differences with defendant, he subsequently withdrew. The counsel who now represents defendant was then appointed.

■ Defendant asserts that the preliminary hearing was held 170 days after his arrest rather than 30 days, as statutorily required, because of the delay which was caused by the prosecutor's "attempt to force the [d]efendant to accept the services of [the public defender who had been appointed initially]." However, even though there was a delay because of the appointment of the first counsel, a good portion of

the ensuing delay appears to have been the result of defendant's own actions and concerns. Further, U.C.A., 1953, § 77–35–7(c) requires that a preliminary hearing be held within 30 days where the defendant is not in custody "provided however that [this] time [period] may be extended by the magistrate for good cause shown." We see no abuse here of that rule.

 Defendant's sixth contention that evidence was insufficient to sustain the verdict is also without merit. Actual physical possession of a controlled substance is not an element of this crime. The contraband need only be shown to have been subject to the dominion and control of the accused or, in other words, within his constructive possession. *State v. Carlson,* Utah, 635 P.2d 72 (1981). It was the jury's duty to weigh the fact that defendant's wife and members of his extended family had access to his home against the fact of his own dominion and control over the property. The evidence was not so insubstantial and lacking that reasonable men could not have reached a verdict beyond a reasonable doubt against him. *State v. Lamm,* Utah, 606 P.2d 229 (1980). See *State v. Villavicencio,* 108 Ariz. 518, 502 P.2d 1337 (1972), where the defendant was convicted of possession of heroin and marijuana which had been found on a porch next to a back wall of his apartment, a location readily accessible to other tenants. We therefore find no basis for reversal on this point.

Defendant's final contention is that the search and his arrest were illegal because the search warrant was executed by a police officer who had not been granted police officer certification. At trial the police chief testified that he was certified and his certification was not then challenged by defendant. Consequently, no further evidentiary hearings were held regarding it. Now the defendant maintains, and the State concedes, the chief had failed to certify as a peace officer within 18 months of his original appointment as required by U.C.A., 1953, § 67–15–7.

 While it is well established that a writ of habeas corpus may not be used as a means for appellate review, *Bryant v. Turner,* 19 Utah 2d 284, 431 P.2d 121, (1967); see also *Gallegos v. Turner,* 17 Utah 2d 273, 409 P.2d 386 (1965), the writ is properly considered by us now because the chief testified at the trial that he had been certified when in fact he had not. This is not something which was known at the time of his trial. *Brown v. Turner,* 21 Utah 2d 96, 440 P.2d 968 (1968). *Codianna v. Morris,* Utah, 660 P.2d 1101 (1983). See also *Morishita v. Morris,* Utah, 621 P.2d 691 (1980); *Chess v. Smith,* Utah, 617 P.2d 341 (1980); and *Johnson v. Turner,* 24 Utah 2d 439, 473 P.2d 901 (1970).

 Without relying upon the fact that the police chief had been certified in California under its law, we conclude that neither the search of defendant's premises nor his arrest was illegal. The participation of authorized police officers has been held to be sufficient to legitimate an unauthorized officer's participation in a search and thereby render the search and its fruits legal. *United States v. Martin,* 600 F.2d 1175 (1979). In the case before us the police chief acted along with certified police officers in the search of the defendant's premises and in his arrest. As in the Martin case, supra, the search warrant was directed "to any peace officer" and therefore not dependent upon the chief's certification alone.

The petition for the writ is denied and the judgment is affirmed.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.