STATE of Utah, Plaintiff and Respondent,

v.

Allen R. WATTS, Defendant and Appellant.

No. 860092.

Supreme Court of Utah.

Feb. 17, 1988.

Gregory M. Warner, Provo, for defendant and appellant.

David L. Wilkinson and Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant and his wife were charged with the unlawful production and possession of marijuana in violation of Utah Code Ann. §§ 58-37-8(1)(a)(i) (1986) (amended 1987), -8(2)(a)(i) (Supp.1985) (amended 1986 & 1987), -4(2)(a)(iii)(M) (1986). The charges against defendant were severed from those against his wife, and defendant stood trial before the court, sitting without a jury. The court found defendant guilty of the production offense, but acquitted him of the felony possession charge because there was insufficient evidence that he possessed

more than 16 ounces of marijuana.[1] On appeal, defendant renews his challenge to the lawfulness of the search for and seizure of the marijuana used to obtain his conviction, and he also claims that the evidence is insufficient to support his conviction.

### I.

The facts are not materially in dispute. On the morning of September 16, 1985, Provo City, Utah, Police Officer Leatham met an unidentified informant in front of defendant's residence, which was located on a Provo lot, enclosed by a fence running down both sides and across the back. The informant advised Leatham that a shed located approximately twenty to twenty-five feet to the rear of defendant's residence was in fact a make-shift greenhouse that contained live marijuana plants. Plexiglass panels covered portions of the south wall and the roof of the structure.

Later that day, the police returned with a warrant to search the shed. Finding no one on the premises, the officers entered the shed, which was divided into two small rooms separated by an interior wall and a door. The first room contained a bicycle which was hanging on the wall and four large marijuana plants which had been left drying on the dirt floor. The second room, partially roofed and sided with plexiglass, contained three large marijuana plants growing out of the dirt floor. These plants were plainly under cultivation, standing eight to ten feet tall, being supported from the ceiling with twine, and having been pruned and watered. Both the drying and the growing plants were seized and thereafter verified as marijuana.

Sometime prior to the search, Provo police had told the informant that if he provided them with information leading to a prosecutable case, a criminal case against him might be dismissed. The police did not give the informant any direction or guidance, nor did they tell him to enter anyone's property or do anything illegal to obtain evidence. Also, prior to the informant's September 16th disclosure, the police did not suspect any criminal activity at defendant's residence.

The record does not disclose the means or the circumstances that permitted the informant to learn that marijuana was being cultivated in the greenhouse. At a pretrial hearing, defendant took the position that the informant had invaded his privacy and violated his right of exclusive possession by unlawfully entering upon his property and by searching the greenhouse as an agent of the police department. Defendant therefore moved to suppress the evidence on the bases of the fourth amendment of the United States Constitution and article I, section 14 of the Utah Constitution. The motion was denied for lack of sufficient evidence that the informant was operating under an agency relationship with the police department.

### II.

■ The fourth amendment guarantee against unreasonable searches and seizures protects only against governmental actions and does not extend to the independent acts of private citizens.[2] Thus, as was observed in *Walter v. United States*,[3] the exclusionary rule has no application to evidence obtained from private citizens acting on their own initiative: "[A] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and ... such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully."[4] Likewise, this Court in *State*

---

1. Possession of less than 16 ounces constitutes a class A misdemeanor, rather than the third degree felony charged. Utah Code Ann. § 58–37–8(2)(b)(i) (Supp.1985) (amended 1986 & 1987).

2. *See, e.g., United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Burdeau v. McDowell,* 256 U.S. 465, 476, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921).

3. 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

4. *Id.* at 656, 100 S.Ct. at 2401 (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion); *Burdeau,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048).

*v. Newbold*[5] held, "The protection of the Fourth Amendment is a restraint only upon the activities of sovereign authority and is not applicable to the searches and seizures by any persons other than government officers and agents."[6]

Article I, section 14 of the Utah Constitution reads nearly verbatim with the fourth amendment, and thus this Court has never drawn any distinctions between the protections afforded by the respective constitutional provisions. Rather, the Court has always considered the protections afforded to be one and the same.[7] We do not depart from that view in this case, and hold that unreasonable private searches are not subject to the protection of article I, section 14 of the Utah Constitution.[8]

■ A search conducted by a private person acting as the agent of a governmental authority is not a private search. In such an instance, the protections of the fourth amendment do have application,[9] as do the protections of article I, section 14 of the Utah Constitution. The burden of establishing governmental involvement in a private search rests upon the party objecting to the evidence.[10]

In the "gray area" between the extremes of overt governmental participation in a search and the complete absence thereof, the search must be judged according to the nature of the governmental participation in the search process[11] and in light of all of the facts and circumstances of the case.[12] The rendition of sound judicial determinations in this area of jurisprudence requires that courts not lose sight of two basic principles. First, law enforcement agencies out of necessity rely heavily on informants.[13] Second, while the voluntary aiding of law enforcement officials by private persons or bodies does not implicate the fourth amendment or article 1, section 14,[14] those provisions do preclude law enforcement officers or agencies from having informants do for them what they cannot legally do themselves.[15]

Two critical areas of inquiry have been identified which bear upon the determination of whether a private person or body has conducted a search as a governmental agent: (1) the government's knowledge of and acquiescence in the intrusive conduct, and (2) the intent and purpose of the per-

---

5. 581 P.2d 991 (Utah 1972) (plurality opinion).

6. *Id.* at 992 (emphasis deleted; footnote omitted).

7. *See State v. Lopes*, 552 P.2d 120, 121 (Utah 1976); *State v. Criscola*, 21 Utah 2d 272, 274, 444 P.2d 517, 518–19 (1968).

8. In declining to depart in this case from our consistent refusal heretofore to interpret article I, section 14 of our constitution in a manner different from the fourth amendment to the federal constitution, we have by no means ruled out the possibility of doing so in some future case. Indeed, choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts. *See, e.g., State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (1988) and accompanying text (citing *State v. Tillman*, 750 P.2d 546, 553 (1987) (plurality opinion); *State v. Hygh*, 711 P.2d 264, 271–72 (1985) (Zimmerman, J., concurring); *State v. Larocco*, 742 P.2d 89, 95 n. 7 (Utah Ct.App.1987); *id.* at 104–05 (Billings, J., concurring and dissenting).

9. *Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656 (quoting *Walter*, 447 U.S. at 662, 100 S.Ct. at 2404 (Blackmun, J., dissenting)).

10. *See e.g., United States v. Snowadzki*, 723 F.2d 1427, 1429 (9th Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984).

11. *United States v. Haes*, 551 F.2d 767, 770 (8th Cir.1977); *United States v. Sherwin*, 539 F.2d 1, 6 & nn. 5–6 (9th Cir.1976).

12. *E.g., Sherwin*, 539 F.2d at 6 (citing *Coolidge*, 403 U.S. at 487, 91 S.Ct. at 2048).

13. *United States v. Bennett*, 729 F.2d 923, 924–25 (2d Cir.) (citing *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973)), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984).

14. *See United States v. Shuckahosee*, 609 F.2d 1351, 1354 (10th Cir.1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 605 (1980); *see also supra* notes 2–8 and accompanying text.

15. *Bennett*, 729 F.2d at 925; *United States v. Jennings*, 653 F.2d 107, 110 (4th Cir.1981).

son(s) or body(ies) conducting the search.[16] By comparing relatively similar cases dealing with the agency issue, it becomes obvious that "an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights."[17]

In *United States v. Walther*,[18] an airline employee (Rivard) found a woman's overnight case, which had been shipped as a "speed pak," suspicious because it was lightweight, did not rattle when shaken, and was taped shut. Rivard opened the case and found "a white powder substance." Rivard contacted the Drug Enforcement Administration (DEA), and his report led to the defendants' arrests on drug-related charges. At a suppression hearing on Walther's motion, it was discovered that the DEA had maintained a file on Rivard for several years, mainly concerning his reporting (while working his employer's ticket counter) of suspicious individuals who fit the "drug profile." On at least eleven occasions, Rivard received payments in exchange for information. And although he had not been financially rewarded for information supplied in connection with the opening of speed paks, "he had no reason not to expect payment" for the same.[19] In affirming the trial court's suppression order, the court of appeals stated:

> We are also satisfied that Rivard's prior experience with the DEA provides proof of the government's acquiescence in the search. While the DEA had no prior knowledge that this particular search would be conducted and had not directly encouraged Rivard to search this overnight case, it had certainly encouraged Rivard to engage in this type of search.[20]

The court continued:

> [Rivard] also testified that the only reason why he opened the case was his suspicion that it contained illegal drugs. Thus, legitimate business considerations such as prevention of fraudulent loss claims were not a factor. The record contained sufficient evidence for the court to conclude also that Rivard opened the case with the expectation of probable reward from the DEA. Rivard acknowledged that there was no reason that he should not expect a reward, and the testimony of a DEA agent established that it would be reasonable for him to have such an expectation. Our review of the record, therefore, indicates that the evidence supports the district court's findings. We are thus satisfied that Rivard opened the package with the requisite mental state of an "instrument or agent."[21]

In contrast, in *United States v. Wedelstedt*,[22] the defendant was convicted of offenses relating to his dealings in stolen films. On appeal, Wedelstedt argued that

**16.** *United States v. Walther*, 652 F.2d 788, 792 (9th Cir.1981); *see also United States v. Lambert*, 771 F.2d 83, 89 (6th Cir.), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985); *United States v. Black*, 767 F.2d 1334, 1339 (9th Cir.), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985); *United States v. Ford*, 765 F.2d 1088, 1090 (11th Cir.1985) (per curiam); *United States v. Howard*, 752 F.2d 220, 227 (6th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636, *modified*, 770 F.2d 57 (6th Cir. 1985) (en banc); *Snowadski*, 723 F.2d at 1429; *United States v. Miller*, 688 F.2d 652, 657 (9th Cir.1982); *United States v. Young*, 620 F.Supp. 79, 80–81 (D.Colo.1985); *Hooper v. Sachs*, 618 F.Supp. 963, 968 (D.Md.1985) (1983 action alleging illegal search and seizure), *aff'd*, 823 F.2d 547 (4th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987); *State v. Crawford*, 110 Idaho 577, 580, 716 P.2d 1349, 1352 (Idaho Ct.App.1986); *see generally* Annotation, *Admissibility, in Criminal Case, of Evidence Obtained by Search by Private Individual*, 36 A.L. R.3d 553 (1971 & Supp.1987). *But see United States v. Cova*, 585 F.Supp. 1187, 1194–95 (E.D. Mo.1984) (crucial inquiry is the extent and degree of the governmental conduct).

**17.** *Arkansas v. Sanders*, 442 U.S. 753, 757, 99 S.Ct. 2586, 2589, 61 L.Ed.2d 235 (1979) (warrantless search conducted by police), *modified sub nom., United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

**18.** 652 F.2d 788.

**19.** *Id.* at 790.

**20.** *Id.* at 793.

**21.** *Id.* at 792.

**22.** 589 F.2d 339 (8th Cir.1978), *cert. denied*, 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

a list of adult films compiled by his employee, Lavin, and admitted at his trial should have been suppressed. The government had obtained the list from its informant, Meade, who saw it attached to a box of films that Lavin was inventorying, and stole it because he "suspected" it pertained to stolen films.[23] The Eighth Circuit Court of Appeals held:

> Assuming *arguendo* that the search was illegal, we do not feel its commission can fairly be attributed to the government. The testimony at trial and at the pretrial suppression hearing indicates that the government did not solicit Meade to get the film list, or seize anything, and did not know that the film list existed. Meade testified that his decision to take the list was unplanned.... At the time Meade took the list, he was an employee of Wedelstedt, providing information to the government about Wedelstedt in exchange for immunity from prosecution. However, there is no evidence that any federal or state agent "directed, authorized or knew" of the seizure by Meade.[24]

■ In the case before us, although there was antecedent conduct between the police and the informant, the "offer" given to the informant was "far too vague and general to constitute governmental knowledge of the search that is here challenged."[25] The Provo Police Department did not in any sense know of or acquiesce in the informant's conduct. Although the police had agreed to assist the informant in having criminal charges against him dismissed if he furnished information leading to a prosecutable case, he was not given specific directions and the police did not exercise control over his activities. Indeed, the police had no reason to suspect any criminal activity at defendant's residence prior to being contacted by the informant on September 16th.

Since governmental involvement existed in the present case, we also look at the informant's purpose in making the search. While it appears that the informant may well have acted in an effort to aid Provo police officers, he was clearly attempting to avoid being prosecuted for a crime. This fact in conjunction with the fact that there was no ongoing relationship between the informant and the police and the fact that he was not rewarded beyond being promised that the charges against him might be dismissed, leads us to the conclusion that his specific actions were for the most part his own and were not substantially motivated by the prompting and encouragement of the Provo Police Department.

In this case, the private nature of a search was not altered simply by the presence of some governmental involvement.[26] The trial court made the factual determination that there was insufficient evidence to indicate that the informant was operating under an agency relationship with the police department. This finding is clearly supported by the record, and we do not disturb it. In conclusion, the facts of this case are distinguishable from those in other cases where government agents encouraged persons to take actions they themselves could not have undertaken.[27]

Since defendant's claim that the search was invalid is without merit, his claim that the seizure was invalid since it was based on the informant's tip, is also without merit.

### III.

Defendant's remaining point on appeal is that the evidence is insufficient to sustain his conviction for the unlawful production of a controlled substance.

■ Actual physical possession is not a necessary element of the offense of produc-

---

**23.** *Id.* at 345.

**24.** *Id.* at 346 (citation omitted).

**25.** *United States v. Bazan,* 807 F.2d 1200, 1203 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).

**26.** *See Coolidge,* 403 U.S. at 485–90, 91 S.Ct. at 2047–2050.

**27.** *See, e.g., Walther,* 652 F.2d 793; *State v. Boynton,* 58 Hawaii 530, 574 P.2d 1330 (1978).

tion of a controlled substance.[28] Conviction of that offense requires proof that the defendant knowingly and intentionally produced such a substance.[29] However, in order to establish the inference that the production of the substance was knowing and intentional, it is sufficient for the prosecution to introduce evidence which demonstrates that a sufficient nexus existed between defendant and the contraband to permit an inference that defendant knew of its existence and had both the power and the intent to exercise dominion and control over and was responsible for the controlled substance in production.[30] Whether a sufficient nexus between the accused and the drug exists depends upon the facts and circumstances of each case.[31]

In support of his contention that the evidence was insufficient to sustain his conviction, defendant relies on the decision of this Court in *State v. Schroff*.[32] In that case, the owner discovered that someone was cultivating two small patches of marijuana in one of his open fields. The sheriff placed the field under surveillance, and two days later the defendant was arrested after he was observed picking leaves from one of the plants. This Court concluded that while that evidence was sufficient to support a charge of possession, it was insufficient to support a charge of cultivation and production.

■ The facts in *Schroff* are readily distinguishable from the facts in this case. Here the evidence was undisputed that the marijuana was being cultivated and produced on property which defendant possessed with his co-defendant wife. Furthermore, the marijuana was being cultivated and produced on a city lot enclosed by a fence, in a greenhouse located twenty feet to the rear of defendant's dwelling, and only accessible through defendant's property. The evidence is also undisputed that defendant and his wife lived in the dwelling in front of the greenhouse; defendant was listed in the telephone directory as the occupant of the property; defendant and his wife listed the property as their residence at the time they were booked into jail; and a neighbor verified that they lived there.

*State v. Fox*[33] is a case that is comparable on its facts. In that case, the primary defendant's yard contained two greenhouses, one of which was attached to his dwelling and was filled with growing marijuana plants. That defendant owned the property, lived in the house, and paid utility bills which were addressed to him. In the face of a challenge to the sufficiency of the evidence, we concluded that whether a sufficient nexus between the accused and the contraband exists depends upon the facts and circumstances of each case.[34] Because the defendant owned and occupied the property and because of the manner in which the greenhouse was constructed in proximity to the house, there was a reasonable inference that the defendant not only knew of the greenhouse and its contents, but also had the power and intent to exercise dominion and control over the marijuana located in it and was responsible for growing the marijuana.[35]

These principles were also applied in *State v. Bradshaw*,[36] another case comparable on its facts. Therein, marijuana was found growing in a planter area next to a root cellar behind the defendant's house and at other locations in his backyard. In the face of a challenge to the sufficiency of the evidence, we noted that the contraband was subject to the defendant's dominion and control, or in other words, was in his constructive possession, and that this fact

---

**28.** *See* Utah Code Ann. § 58–37–8(1)(a)(i) (1986) (amended 1987).

**29.** *State v. Fox,* 709 P.2d 316, 318–19 (Utah 1985).

**30.** *Id.* at 319–20; *see also State v. Bradshaw,* 680 P.2d 1036, 1041 (Utah 1984); *State v. Echevarrieta,* 621 P.2d 709, 712 (Utah 1980) (plurality opinion).

**31.** *See Fox,* 709 P.2d at 320.

**32.** 30 Utah 2d 125, 514 P.2d 793 (1973).

**33.** 709 P.2d 316.

**34.** *See id.* at 320.

**35.** *Id.*

**36.** 680 P.2d 1036.

was apposite to prove the production charge. We also noted that it was the duty of the fact finder to weigh the fact that defendant's wife and family members had access to his home against the fact of the defendant's own dominion and control over the property.[37] We concluded that the evidence was not so insubstantial and lacking that reasonable individuals could not have reached a verdict beyond a reasonable doubt against the defendant.[38]

After reviewing the record in the instant case in light of the principles discussed above, we have concluded that the trial court did not err in rendering judgment. Based on the evidence concerning the proximity of the greenhouse to defendant's dwelling, other record evidence, and the reasonable inferences to be drawn therefrom, the trial court was justified in determining that defendant knowingly participated in the ongoing care of the flourishing plants at his residence.[39]

The conviction and judgment of the trial court are affirmed.

HOWE, J., and ORME, Court of Appeals Judge, concur.

STEWART, Associate C.J., does not participate herein; ORME, Court of Appeals Judge, sat.

ZIMMERMAN, Justice: (dissenting).

I dissent from the result reached by the majority. At most, the evidence shows that for some undetermined period of time both the defendant, Allen Watts, and his wife, Debbie Watts, enjoyed possession of rented property, which included the house in which they dwelled and a shed in which marijuana plants were found. Although

marijuana was being cultivated in the shed, there was no evidence, direct or indirect, that Allen or Debbie had ever even entered the shed during the time they rented the house, much less that they were cultivating the marijuana. Under these circumstances, the most that Allen could be convicted of is possession of marijuana. *See State v. Fox,* 709 P.2d 316, 318–20 (Utah 1985). However, the trial court convicted Allen of unlawful production of marijuana. Although the majority opinion contains a lengthy discussion of the prior cases and paeans to the discretion of the fact finder, it is impossible to tell on what factual grounds Allen's conviction is being sustained. There is absolutely no evidence as to who cultivated and maintained the marijuana plants. I submit that the evidence and all reasonable inferences drawn therefrom can sustain only a finding that Allen knew of the marijuana growing in the shed and acquiesced in its cultivation. As I read *State v. Fox,* mere acquiescence in the cultivation of marijuana plants cannot sustain a conviction on a production charge.

Another point in the majority opinion deserves comment. The defendant's counsel has commendably briefed the search and seizure question under both the state and federal constitutions, something we see far too seldom. I agree with the majority that on the facts of this case, the private search that occurred does not come within the protections of article I, section 14 of the Utah Constitution. However, I certainly do not agree with the categorical assertions in the majority opinion that this Court has "never drawn any distinctions" between article I, section 14 and the federal fourth amendment and has "always considered the protections afforded to be one and the

---

37. *Id.* at 1041. Evidence of possession may be part of a circumstantial link in the necessary chain of evidence supporting a conviction for production of a controlled substance. *See supra* note 30, and accompanying text.

38. 680 P.2d at 1041.

39. In ruling, we note that defendant's dominion and control were nonexclusive only insofar as it was shared with his wife. He and his wife had exclusive dominion and control over the property. In this regard, it is telling that at the hearing to suppress the marijuana, defendant and

his wife testified that they had not given anyone permission to come onto "their" premises during the time period the informant said he observed the marijuana in the shed.

Defendant's "nonexclusive" dominion and control readily distinguishes him from the primary defendant's brother, Clive Fox, whose conviction was reversed in *State v. Fox,* because Clive Fox lacked "even nonexclusive dominion or control over the area where the marijuana was found." 709 P.2d at 320.

same" or with the majority opinion's intimation that there is no substantive distinction between the state and federal provisions. Several of our older cases may have language that supports this view, although none have pondered the question deeply, and some members of this Court may still agree with it, but I do not think this dictum expresses the views of all those joining in the Chief Justice's opinion, much less a majority of the Court. My view on this point finds support in footnote 8 of the majority opinion, which differs dramatically in tone from the text referred to above.

For the reasons stated, I would reverse the conviction.

DURHAM, J., concurs in the dissenting opinion of ZIMMERMAN, J.