NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DUSTIN CLINTON THOMAS JAMISON, *Appellant.*

No. 1 CA-CR 22-0575
FILED 1-30-2024

Appeal from the Superior Court in Mohave County
No. S8015CR201900579
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Jill L. Evans, Flagstaff
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Emily Tyson-Jorgenson
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which
Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

**C R U Z**, Judge:

¶1 Dustin Clinton Thomas Jamison appeals his convictions and sentences for one count of possession of dangerous drugs for sale (methamphetamine) and one count of possession of drug paraphernalia. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In 2019, Jamison worked for several months as an informant for the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). His handler was Special Agent Fletcher Ogg. Jamison signed a written agreement stating that he would conduct controlled purchases under the direction of ATF and acknowledging that "any violation of the law not expressly authorized by ATF may result in my prosecution." Agent Ogg repeatedly warned Jamison not to buy or sell drugs unless directed to by Agent Ogg.

¶3 On March 28, 2019, Agent Ogg was surveilling the house of a known drug dealer named Jessica when he saw Jamison's vehicle parked in her driveway. Agent Ogg had not asked Jamison to be there at that time, and Jamison had not told him he was going to the drug dealer's house.

¶4 Later that day, Agent Ogg saw Jamison driving and pulled him over for a traffic violation. Jamison stepped out of his vehicle, and Agent Ogg observed that he was sweaty, shaky, nervous, and looked to be under the influence of methamphetamine. Jamison appeared to have something under his shirt, and when Agent Ogg lifted the shirt he found a bag tied to Jamison's belt buckle. Agent Ogg touched the bag and felt shards of methamphetamine through the fabric.

¶5 Agent Ogg arrested Jamison, who admitted the bag contained a half-ounce of methamphetamine and told Agent Ogg there was a needle under his genitalia. Jamison denied planning to sell the methamphetamine but admitted he had sold drugs while working for Agent Ogg before March 28. Agent Ogg permitted Jamison to remove the needle from his pants and he gave it to Agent Ogg. A Mohave County Sheriff's Office detective booked Jamison into custody, and Agent Ogg gave the methamphetamine, bag, and needle to the detective, who packaged the bag and methamphetamine and placed them into evidence storage. The detective disposed of the needle for safety reasons. The substance in the bag was later tested and determined to be 13.8 grams of methamphetamine.

**¶6**        While in jail, Jamison called Agent Ogg.  Jamison admitted he got the methamphetamine Agent Ogg found on his person from Jessica.

**¶7**        Jamison was charged with one count of possession of dangerous drugs for sale (methamphetamine), a class 2 felony, and one count of possession of drug paraphernalia, a class 6 felony.

**¶8**        At trial, Jamison moved for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure ("Rule") 20.  After argument, the superior court denied the motion.  The jury found Jamison guilty as charged and found as an aggravating circumstance that he committed count 1 for pecuniary gain.

**¶9**        The superior court sentenced Jamison to a presumptive sentence of ten years in prison for count 1 and six months in prison for count 2, to run concurrently.  It gave him credit for 140 days of presentence incarceration.

**¶10**        Jamison timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶11**        Jamison argues the superior court erred by allowing the jury to consider evidence of the drugs and paraphernalia at trial because the State did not establish a sufficient chain of custody to authenticate the evidence, and thus, there was insufficient evidence to support his convictions.  He also argues the superior court erred and violated his due process rights by sustaining the State's objection to questions he asked Detective Jones on cross-examination.

I.        Chain of Custody

**¶12**        Because Jamison did not object to the admission of the drugs and paraphernalia in the superior court, he must show that fundamental error occurred.  *See State v. Jackson*, 170 Ariz. 89, 93 (App. 1991).

**¶13**        "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error  . . . caused him prejudice." *State v. Robles*, 213 Ariz. 268, 272, ¶ 12 (App. 2006) (citation and internal quotation marks omitted).  "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his

defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). "Prejudice is a fact-intensive inquiry, the outcome of which will depend . . . upon the type of error that occurred and the facts of a particular case." *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (citation and internal quotation marks omitted). A defendant "must affirmatively prove prejudice and may not rely upon speculation to carry his burden." *Id.* (citation and internal quotation marks omitted).

**¶14** We review the superior court's evidentiary rulings and conclusion that the evidence has an adequate foundation for an abuse of discretion. *State v. McCray*, 218 Ariz. 252, 256, ¶ 8 (2008); *State v. Moreno*, 26 Ariz. App. 178, 185 (1976) ("The ultimate decision of whether sufficient foundation has been laid is within the sound discretion of the trial court.").

**¶15** Evidence is authenticated when there is "evidence sufficient to support a finding that the item is what the proponent claims it is." Ariz. R. Evid. ("Rule") 901(a). A foundation that satisfies Rule 901(a) "may be laid by evidence either identifying the item or establishing chain of custody." *State v. Steinle*, 239 Ariz. 415, 420, ¶ 24 (2016).

**¶16** "In the case of a narcotic which is readily susceptible to alteration and substitution, once it has left the hand of the officer receiving it and has come into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake. Failure to establish such a chain of possession will render the narcotic inadmissible as evidence." *State v. Davis*, 110 Ariz. 51, 53 (1973). "A party seeking to authenticate evidence based on a chain of custody must show continuity of possession, but it need not disprove every remote possibility of tampering. Furthermore, [a party] need not call every person who had an opportunity to come in contact with the evidence sought to be admitted." *McCray*, 218 Ariz. at 256, ¶ 9 (citations and internal quotation marks omitted).

**¶17** "Evidence which strongly suggests the exact whereabouts of the exhibit at all times will often be sufficient for chain of custody purposes." *Davis*, 110 Ariz. at 53 (citation omitted). "[A]n exhibit is admissible when it has been identified as being the same object about which testimony is given and when it is stated to be in substantially the same condition as at the time of the occurrence in question." *State v. Ritchey*, 107 Ariz. 552, 556-57 (1971). "[M]arkings made by . . . investigating [officers] and their testimony as to the condition of the exhibits provide sufficient foundation for their admission in evidence, notwithstanding the inability

of the state to show a continuous chain of custody. Under such circumstances, unless a defendant can offer proof of actual change in the evidence, or show that the evidence has, indeed, been tampered with, such evidence will be admissible." *Id.* at 557. "Flaws in the chain of custody normally go to the weight the jury gives to the evidence, not its admissibility into evidence." *State v. Morales*, 170 Ariz. 360, 365 (App. 1991).

¶18        Detective Jones testified that after he received the methamphetamine, bag, and needle from Agent Ogg, he packaged the methamphetamine and bagged and placed the evidence into the Mohave County Sheriff's Office's evidence storage. Detective Jones disposed of the needle for safety reasons. During his testimony, the prosecutor asked Detective Jones to examine exhibit A9, which Detective Jones identified as the envelope of evidence he packaged in this case. Detective Jones testified that he knew it was the same envelope because it had his initials on it and every seal, and the Sheriff's Office department number written on the front. Detective Jones agreed that the envelope looked the same or substantially the same as when he last saw it. The prosecutor asked Detective Jones to open the envelope, and after doing so, Detective Jones identified the contents of the envelope as the bag of methamphetamine he received from Agent Ogg and packaged in the envelope. Detective Jones testified that the bag of methamphetamine looked the same or substantially the same as when he last saw it. The State moved to admit the envelope containing the bag of methamphetamine into evidence, and the court did so.[1] When the court asked whether defense counsel objected to the admission of the evidence, counsel stated he had no objection. During Detective Jones' testimony, the State also moved to admit the Mohave County Sheriff's Office's chain of custody form, exhibit A10. Defense counsel did not object. Detective Jones testified that nothing appeared out of the ordinary concerning chain of custody of the evidence.

¶19        Mary Martinez, a forensic scientist with the Arizona Department of Public Safety ("DPS") who worked in the controlled substance unit, testified about the analysis done on the methamphetamine, DPS's chain of custody report (exhibit A11), and the envelope from the Mohave County Sheriff's Office containing the methamphetamine and bag (exhibit A9). The State moved to admit exhibit A11 during Martinez' testimony, and defense counsel did not object. Martinez testified that the envelope had a DPS bar code with the DPS case number that correlated to

---

[1]        The envelope and bag of methamphetamine were later replaced with a picture of the envelope in digital evidence.

DPS's chain of custody report. She further testified that nothing appeared out of the ordinary concerning the chain of custody of the evidence.

¶20 Here, there was no evidence that the evidence was changed, tampered with, or was anywhere other than the Sheriff's Office or the DPS crime lab. We find no error, fundamental or otherwise, with the superior court's determination that there was sufficient foundation to admit the evidence.

II. Sufficiency of the Evidence

¶21 Jamison argues his convictions should be vacated because the superior court erred by denying his Rule 20 motion. *See* Rule 20(a)(1) ("After the close of evidence on either side, and on motion or on its own, the court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no substantial evidence to support a conviction.").

¶22 For count 1, Jamison was convicted of possession of dangerous drugs for sale (methamphetamine). The crime of possession of dangerous drugs for sale (methamphetamine) requires proof that the defendant knowingly possessed methamphetamine for the purposes of sale. A.R.S. § 13-3407(A)(2). For count 2, Jamison was convicted of possession of drug paraphernalia. The crime of possession of drug paraphernalia requires proof that the defendant used or possessed with the intent to use "drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a drug in violation of this chapter." A.R.S. § 13-3415(A).

¶23 According to Jamison, there was insufficient evidence to show that he committed the offense of possession of methamphetamine for sale because evidence of the methamphetamine was admitted without foundation for the reasons discussed above, and the State did not prove "the identity of the drugs as methamphetamine, and the weight of the drugs which was the basis of [Agent] Ogg's opinion that they were possessed for the purpose of sale." As for the possession of drug paraphernalia charge, Jamison similarly argues the bag was admitted without foundation, and if the paraphernalia was the needle, that item was neither submitted to the lab for testing, nor admitted into evidence.

6

¶24        We review the denial of a Rule 20 motion de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Substantial evidence is "proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* at ¶ 16 (citation and internal quotation marks omitted). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603 (1997). We view the facts in the light most favorable to sustaining the verdicts and resolve all conflicts in the evidence against the defendant. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013); *State v. Bustamante*, 229 Ariz. 256, 258, ¶ 5 (App. 2012). "[I]n reviewing the sufficiency of the evidence, we do not distinguish circumstantial from direct evidence." *State v. Borquez*, 232 Ariz. 484, 487, ¶ 11 (App. 2013).

¶25        Substantial evidence supports the jury's verdicts. The testimony of the DPS forensic scientist established that the substance inside the bag was a useable quantity of methamphetamine—13.8 grams. Agent Ogg testified that he felt shards of methamphetamine through the fabric of the bag when he touched it on Jamison's person, and that, based on his training and experience, 13.8 grams of methamphetamine was a saleable amount. The evidence also showed that Jamison told Agent Ogg that the bag contained a half-ounce of methamphetamine. As discussed above, the superior court did not err in finding there was sufficient foundation to admit evidence of the methamphetamine.

¶26        At trial, the State argued that the drug paraphernalia could be either the bag or the needle. Whether the jury relied on the bag or needle as the drug paraphernalia for the possession of drug paraphernalia conviction, sufficient evidence also supported that conviction. As discussed above, the superior court did not err in finding there was sufficient foundation to admit evidence of the bag, and the evidence showed that Jamison used the bag to store or contain the methamphetamine. As for the needle, the fact that DPS did not test it does not negate its identity as drug paraphernalia because the actual presence of drugs is not required. *See* A.R.S. § 13-3415(A) (essential elements of drug paraphernalia). Although it is true that the needle was not presented to the jury, the evidence shows that Jamison told Agent Ogg he had the needle under his genitals, Jamison gave the needle to Agent Ogg, and Agent Ogg gave the needle to Detective Jones, who disposed of it for safety reasons. Agent Ogg's and Detective Jones' testimony about the needle and the recording of Jamison telling Agent Ogg about the needle was sufficient evidence to support the conviction.

¶27        Viewing the evidence in the light most favorable to the State, a rational juror could have found the essential elements of possession of methamphetamine for sale and possession of drug paraphernalia beyond a reasonable doubt. *See West*, 226 Ariz. at 562, ¶ 15. Because substantial evidence reasonably supported the conclusion that Jamison possessed methamphetamine for sale and possessed drug paraphernalia, the superior court properly denied his Rule 20 motion.

III.    The State's Objections

¶28        Finally, Jamison argues the superior court erred by sustaining the State's objections to two of his questions regarding the chain of custody during Detective Jones' testimony.

¶29        We review the superior court's evidentiary rulings and conclusion that the evidence has an adequate foundation for an abuse of discretion. *McCray*, 218 Ariz. at 256, ¶ 8.

¶30        During Jamison's cross-examination of Detective Jones, the following occurred:

> [Defense counsel]:  So if the envelope [containing the methamphetamine and bag] went to the state crime lab for testing, how would you know about that?
>
> [Detective Jones]:  There would be I'm the one that myself [sic] or someone else would fill out a DPS lab's form to request that it be tested.
>
> [Defense counsel]:  Okay. And can you tell whether or not that happened in this case?
>
> [Detective Jones]:  I did submit a DPS lab's form for it to be tested.
>
> [Defense counsel]:  Okay. So then how does it get from that locker to the lab?
>
> [Detective Jones]:  It is transported by Mohave County Sheriff's Office employees.
>
> [Defense counsel]:  Who did that?
>
> [Detective Jones]:  I'm not sure. I don't work in that department.

[Defense counsel]: Okay. And how would we — how would the jury know who did that?

[Prosecutor]: Objection, relevance and asked and answered.

[The Court]: I'll sustain the objection.

[Defense counsel]: So Detective Jones, one of the things that's important about evidence is maintaining a chain of custody, right?

[Detective Jones]: Correct.

[Defense counsel]: So do you have a way to tell who all the people are who have come into contact with that since you put it into the locker?

[Detective Jones]: In front of me right now, I do not.

[Defense counsel]: Do you have that somewhere else?

[Detective Jones]: Again, there is a form that is filled out requesting this. And when this evidence is sent, whoever is handling the evidence also fills out the evidence form with it. So yes, there is a way to track the chain of custody. I don't have that because I'm not the evidence tech.

[Defense counsel]: Okay. And then if that evidence — have you provided that to the counsel for the State, to the County Attorney's Office?

[Prosecutor]: Objection, relevance.

After a bench conference, the superior court sustained the prosecutor's second objection.

¶31 We find no error in the superior court's rulings sustaining the State's objections. The first objected-to question asked how the jury could know who transported the evidence to the lab, which was information Detective Jones already said he did not know. The second objected-to question asked whether Detective Jones had provided a chain of custody form to the State, but he had already testified that he did not have the form because he was not the evidence technician. Because neither question would have produced relevant evidence, the superior court did not abuse its discretion by sustaining the State's objections.

## CONCLUSION

¶32        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA